**2016-1006**

---

## IN THE
## UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

---

**VIET I-MEI FROZEN FOODS CO., LTD.,**

$\qquad$ **Plaintiff - Appellant,**

**v.**

**UNITED STATES,**
**AD HOC SHRIMP TRADE ACTION COMMITTEE,**

$\qquad$ **Defendants -Appellees.**

**Appeal from the United States Court of International Trade in**
**Case No. 14-CV-00092-DCP, Judge Donald C. Pogue**

---

### RESPONSE BRIEF OF DEFENDANT-APPELLEE
### AD HOC SHRIMP TRADE ACTION COMMITTEE

---

Nathaniel Maandig Rickard
Meixuan (Michelle) Li
**PICARD KENTZ & ROWE LLP**
1750 K Street, N.W., Suite 800
Washington, D.C. 20006
202-331-5040

February 26, 2016

## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Viet I-Mei Frozen Foods Co.     **v.**     United States

Case No.     2016-1006

### CERTIFICATE OF INTEREST

Counsel for the (petitioner) (appellant) (respondent) (appellee) (amicus) (name of party)

Ad Hoc Shrimp Trade Action Committee      certifies the following (use "None" if applicable; use extra sheets
if necessary):

1.      The full name of every party or amicus represented by me is:


Ad Hoc Shrimp Trade Action Committee


2.      The name of the real party in interest (Please only include any real party in interest
NOT identified in Question 3. below) represented by me is:


Not applicable


3.      All parent corporations and any publicly held companies that own 10 percent of the
stock of the party or amicus curiae represented by me are listed below. (Please list each party
or amicus curiae represented with the parent or publicly held company that owns 10 percent
or more so they are distinguished separately.)


None


4.  ☒    The names of all law firms and the partners or associates that appeared for the party
or amicus now represented by me in the trial court or agency or are expected to appear
in this court (and who have not or will not enter an appearance in this case) are:

Trial Court: Picard Kentz & Rowe LLP (Andrew William Kentz, Meixuan (Michelle) Li, Nathaniel Maandig Rickard,
Roop Kiran Bhatti).
This Court: Picard Kentz & Rowe LLP (Andrew William Kentz, Meixuan (Michelle) Li, Nathaniel Maandig Rickard,
Roop Kiran Bhatti)


February 26, 2016                               /s/ Nathaniel Maandig Rickard
_____        _____
Date                                       Signature of counsel


Please Note: All questions must be answered

                                          Nathaniel Maandig Rickard
cc:  _____           _____
                                          Printed name of counsel

Reset Fields

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ....................................................................... i

TABLE OF AUTHORITIES ................................................................ ii

I.     STATEMENT OF RELATED CASES .....................................1

II.    STATEMENT OF THE CASE ..................................................1

III.   STATEMENT OF FACTS ..........................................................2

   A.    PRIOR COMMERCE PROCEEDINGS ..................................2

   B.    THE RE-CONDUCTED AR4 PROCEEDING AND OTHER
         ADMINISTRATIVE PROCEEDINGS INVOLVING GROBEST'S
         U.S. AFFILIATE .........................................................................3

   C.    CIT APPEAL OF THE RE-CONDUCTED AR4 ......................8

IV.    SUMMARY OF THE ARGUMENT ........................................10

V.     ARGUMENT ...........................................................................12

   A.    STANDARD OF REVIEW....................................................12

   B.    COMMERCE PROPERLY DENIED VIET I-MEI'S REQUEST TO
         RESCIND THE INDIVIDUAL EXAMINATION OF GROBEST...13

         1.    COMMERCE APPROPRIATELY COMPLIED WITH THE
               FINAL JUDGMENT THROUGH THE INDIVIDUAL
               EXAMINATION OF GROBEST ..............................13

         2.    FOREIGN EXPORTERS DO NOT CONTROL THE
               CONDUCT OF INDIVIDUAL EXAMINATIONS OF
               VOLUNTARY RESPONDENTS ..............................17

         3.    VIET I-MEI'S ARGUMENTS REGARDING A BALANCING
               TEST ARE ERRONEOUS..........................................24

i

C.    COMMERCE PROPERLY APPLIED AFA TO ASSIGN GROBEST THE SAME DUMPING MARGIN AS THE VIETNAM-WIDE ENTITY.........................................................................28

    1.    EACH STATUTORY AFA PREREQUISITE IS SATISFIED .................................................................................28

    2.    COMMERCE'S SELECTED AFA RATE IS PROPER..........31

VI.    CONCLUSION AND STATEMENT OF RELIEF SOUGHT ...............34

# TABLE OF AUTHORITIES

## Cases

Ad Hoc Shrimp Trade Action Comm. v. United States, __ Ct. Int'l Trade __, 992 F. Supp. 2d 1285 (2014)……………………………………………….......10

Ad Hoc Shrimp Trade Action Committee v. United States, 802 F.3d 1339 (Fed. Cir. 2015)………………………………………………………………4, 5

DaimlerChrysler Corp. v. United States, 30 Ct. Int'l Trade 1945 (2006)………...16

Doe v. United States, 372 F.3d 1347 (Fed. Cir. 2004)……………………………20

Essar Steel Ltd. v. United States, 721 F. Supp. 2d 1285 (Ct. Int'l Trade 2010), aff'd in relevant part, 678 F.3d 1268 (Fed. Cir. 2012)…………………………...29

F.lli. de Cecco di Filippo Fara S. Martino S.p.A. v. United States, 216 F.3d 1027 (Fed. Cir. 2000)……………………………………………………...13, 31

Fag Kugelfischer Georg Schafer AG v. United States, 332 F.3d 1370 (Fed. Cir. 2003)………………………………………………………………………..12

Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 368 (1981)……………………15

Fujian Mach. & Equip. Imp. & Exp. Corp. v. United States, 276 F. Supp. 2d 1371 (Ct. Int'l Trade 2003)………………………………………………………31

Gallant Ocean (Thail.) Co. v. United States, 602 F.3d 1319 (Fed. Cir. 2010).......................................................................................32-33

Grobest & I-Mei Indus. (Vietnam) Co. v. United States, 815 F. Supp. 2d 1342 (Ct. Int'l Trade 2012)…………..…………………………………………...19

Hebei Metals & Minerals Imp. & Exp. Corp. v. United States, 29 Ct. Int'l Trade 1204 (2005)………………………………………………………………..30

Household Credit Servs. v. Pfennig, 541 U.S. 232 (2004)………………………..20

Huvis Corp. v. United States, 570 F.3d 1347 (Fed. Cir. 2009)…………………...12

iii

Int'l Trading Co. v. United States, 281 F.3d 1268 (Fed. Cir. 2002)………………12

KYD, Inc. v. United States, 607 F.3d 760 (Fed. Cir. 2010)………………………31

Longkou Haimeng Machinery Co., Ltd. v. United States, 581 F. Supp. 2d 1344 (Ct. Int'l Trade 2008)……………………………………………………………...21

Nan Ya Plastics Corp. v. United States, 810 F.3d 1333 (Fed. Cir. 2016)…….32-33

Ningbo Dafa Chem. Fiber Co. v. United States, 580 F.3d 1247 (Fed. Cir. 2009)…....................................................................................................12

Nippon Steel Corp. v. United States, 337 F.3d 1373 (Fed. Cir. 2003)……………30

PAM, S.p.A. v. United States, 582 F.3d 1336 (Fed. Cir. 2009)…………………..31

Reiner Brach GmbH & Co. KG v. United States, 206 F. Supp. 2d 1323 (Ct. Int'l Trade 2002) ………………………………………………………………..31

RHI Refractories Liaoning Co. v. United States, 752 F. Supp. 2d 1377 (Ct. Int'l Trade 2011) ………………………………………………………………..15

Shandong Huarong Gen. Group Corp. v. United States, 27 Ct. Int'l Trade 1568 (2003)……………………………………………………………………30

Ta Chen Stainless Steel Pipe, Inc. v. United States, 298 F.3d 1330 (Fed. Cir. 2002)……………………………………………………………………..30

Tianjin Mach. Imp. & Exp. Corp. v. United States, 353 F. Supp. 2d 1294 (Ct. Int'l Trade 2004)……………………………………………………………...30

Tung Fong Indus. Co. v. United States, 28 Ct. Int'l Trade 459 (2004)…………...21

Viet I-Mei Frozen Foods Co., Ltd. v. United States, 83 F. Supp. 3d 1345 (Ct. Int'l Trade 2015)……………………………………………………………passim

Yancheng Baolong Biochem. Prods. Co. v. United States, 337 F.3d 1332 (Fed. Cir. 2003)…………………………………………………………………..12

**Statutes**

19 U.S.C. § 1677e………………………………………………………21, 29, 32

19 U.S.C. § 1677m…………………………………………………………………18, 19

**Regulations**

19 C.F.R. § 351.204……………………………………………………………...20, 21

19 C.F.R. § 351.213…………………………………………………………17, 18, 24

**Rules**

Fed. Cir. Rule 28……………………………………………………………...1, 2

Fed. Cir. Rule 47.5………………………………………………………… ……1

USCIT R. 15………………………………………………………………………16

USCIT R. 60……………………………………………………………..16, 17

**Administrative Authorities**

Certain Cold-Rolled Carbon Steel Flat Products from Sweden, 67 Fed. Reg. 31,251
(Dep't of Commerce May 9, 2002) (notice of preliminary determination of
sales at LTFV) …………………………………………………..22, 23

Certain Frozen Warmwater Shrimp from the People's Republic of China, 77 Fed.
Reg. 53,856 (Dep't of Commerce Sept. 4, 2012) (final results of
administrative review)……………………………………………...4-5, 10

Certain Frozen Warmwater Shrimp from the Socialist Republic of Vietnam, 72
Fed. Reg. 10,689 (Dep't of Commerce Mar. 9, 2007) (preliminary results of
the first administrative review and new shipper review)……………………3

Certain Frozen Warmwater Shrimp from the Socialist Republic of Vietnam, 72
Fed. Reg. 52,052 (Dep't of Commerce Sept. 12, 2007) (final results of the
first administrative review and new shipper review)………………………..3

Certain Frozen Warmwater Shrimp from the Socialist Republic of Vietnam, 77
Fed. Reg. 63,786 (Dep't of Commerce Oct. 17, 2012) (notice of court
decision not in harmony with final results of administrative review, notice of
re-conduct of administrative review of Grobest & I Mei Industrial (Vietnam)
Co., Ltd., and notice of amended final Results of administrative review)…..4

<u>Certain Frozen Warmwater Shrimp from the Socialist Republic of Vietnam</u>, 78
Fed. Reg. 57,352 (Dep't of Commerce Sept. 18, 2013) (preliminary results
of re-conducted administrative review of Grobest & I-Mei Industrial
(Vietnam) Co., Ltd. and intent not to revoke; 2008-2009)……29-30, 32-33

<u>Certain Frozen Warmwater Shrimp from Vietnam</u>, 79 Fed. Reg. 15,309 (Dep't of
Commerce Mar. 19, 2014) (final results of re-conducted administrative
review of Grobest & I-Mei Industrial (Vietnam) Co. Ltd. and intent not to
revoke)…………………………………………………………….passim

<u>Countervailing Duty Investigation of 1,1,1,2 – Tetrafluoroethane from the People's
Republic of China</u>, 79 Fed. Reg. 21,895 (Dep't of Commerce Apr. 18, 2014)
(preliminary affirmative determination and alignment of final determination
with final antidumping determination)…………………………...……...20

<u>Wooden Bedroom Furniture from the People's Republic of China</u>, 79 Fed. Reg.
51,954 (Dep't of Commerce Sept. 2, 2014) (final results of antidumping
duty administrative review and new shipper review; 2012)……..……..21-23

## RESPONSE BRIEF OF AD HOC SHRIMP TRADE ACTION COMMITTEE (DEFENDANT-APPELLEE)

## I.   STATEMENT OF RELATED CASES

In accordance with Federal Circuit Rules 47.5 and 28 (a)(4), counsel for Defendant-Appellee Ad Hoc Shrimp Trade Action Committee ("AHSTAC") hereby makes the following statement:

1.    Previously there has been no appeal before this Court or any other appellate court from the same civil action or proceeding in the lower court.

2.    Counsel is not aware of any other case pending in this or any other court that will directly affect or be directly affected by this Court's decision in the pending appeal.

## II.   STATEMENT OF THE CASE

Appellant Viet I-Mei Frozen Foods. Co., Ltd. ("Viet I-Mei"), successor in interest to Grobest & I-Mei Industrial (Vietnam) Co. Ltd. ("Grobest"), challenged two aspects of the <u>Final Results</u> in the re-conducted fourth administrative review ("AR4") of the antidumping duty ("AD") order regarding frozen warmwater shrimp from the Socialist Republic of Vietnam ("Vietnam") in the United States Court of International Trade ("CIT" or "Court of International Trade"):  1) the U.S. Department of Commerce's ("Commerce") decision not to rescind its individual

1

examination of Grobest in the re-conducted AR4; and 2) Commerce's consequent decision to apply AFA to Grobest based on its failure to participate and assign it the same margin as the Vietnam-wide entity.  See Certain Frozen Warmwater Shrimp from the Socialist Republic of Vietnam, 79 Fed. Reg. 15,309 (Dep't of Commerce Mar. 19, 2014) (final results of re-conducted administrative review of Grobest & I-Mei Industrial (Vietnam) Co. Ltd. and intent not to revoke) ("Re-conducted Final Results"), JA at 3383-84 and accompanying Issues and Decision Memorandum ("Re-conducted IDM"), JA at 3374-82.  On July 30, 2015, the CIT issued an opinion sustaining the Re-conducted Final Results.  Viet I-Mei Frozen Foods Co., Ltd. v. United States, 83 F. Supp. 3d 1345 (Ct. Int'l Trade 2015), JA 5-23.  Viet I-Mei is appealing the CIT's decision.

## III.  **STATEMENT OF FACTS**

In accordance with Fed. Cir. Rule 28(b), the facts presented below are limited to either specific points of disagreement or omissions in the facts presented by Viet I-Mei.  See Viet I-Mei Appellant Brief at 2-12.

### A.  **Prior Commerce Proceedings**

In the preliminary results of the new shipper review requested by Grobest (see Viet I-Mei Appellant Brief at 3-4), Commerce observed that it had verified the

2

information submitted by the Vietnamese exporter and its affiliated U.S. importer,

Ocean Duke:

> The verification of Grobest's sales and FOPs and that of its affiliated United States importer Ocean Duke took place from November 29, 2006, through December 8, 2006.  See Memorandum to the file through Alex Villanueva, Program Manager, Office 9, Import Administration, from Nicole Bankhead, Analyst, Office 9: Verification of the Sales and Factors Response of Grobest & I-Mei Industrial (Vietnam) Co., Ltd. ("Grobest") and its affiliate Ocean Duke in the Antidumping New Shipper Review of Certain Frozen Warmwater Shrimp from the Socialist Republic of Vietnam.

Certain Frozen Warmwater Shrimp from the Socialist Republic of Vietnam, 72

Fed. Reg. 10,689, 10,693 n.13 (Dep't of Commerce Mar. 9, 2007) (preliminary

results of the first administrative review and new shipper review).  In the final

results, Commerce again referred to Ocean Duke as Grobest's affiliate.  See Issues

and Decision Memorandum (Cmt. 11) accompanying Certain Frozen Warmwater

Shrimp from the Socialist Republic of Vietnam, 72 Fed. Reg. 52,052 (Dep't of

Commerce Sept. 12, 2007) (final results of the first administrative review and new

shipper review).

### B.     The Re-conducted AR4 Proceeding and Other Administrative Proceedings Involving Grobest's U.S. Affiliate

On October 17, 2012, consistent with the CIT's Final Judgment (JA 3246),

Commerce published notice of the initiation of its re-conducted AR4 for Grobest.

3

<u>Certain Frozen Warmwater Shrimp from the Socialist Republic of Vietnam</u>, 77 Fed. Reg. 63,786, 63,786 (Dep't of Commerce Oct. 17, 2012) (notice of court decision not in harmony with final results of administrative review, notice of re-conduct of administrative review of Grobest & I Mei Industrial (Vietnam) Co., Ltd., and notice of amended final Results of administrative review), JA at 3248.

In the context of separate litigation involving Grobest's affiliated U.S. importer, the Court of Appeals for the Federal Circuit recently summarized developments that took place in 2012 regarding Ocean Duke and another affiliate in an administrative review proceeding related to warmwater shrimp from China:

> On March 12, 2012 . . . the Shrimp Trade Committee placed on the record public information it obtained following the convictions of several individuals associated with Hilltop and its United States affiliate, Ocean Duke Corp. ("Ocean Duke"). These materials indicate that in March 2011, Mr. Duke Chau-Shing Lin ("Mr. Lin"), the president of Ocean Duke, and the Government entered into a written plea agreement wherein Mr. Lin pled guilty to two misdemeanor counts with respect to the misbranding of certain fish imports.

<u>Ad Hoc Shrimp Trade Action Committee v. United States</u>, 802 F.3d 1339, 1344 (Fed. Cir. 2015). This Court observed that Commerce eventually deemed Ocean Duke's affiliate in China to not be eligible for a separate rate:

> On September 4, 2012, Commerce published its Final Results for the Sixth Review. Certain Frozen Warmwater Shrimp from the People's Republic of China, 77 Fed. Reg. 53,856 (Dep't of Commerce Sept. 4,

2012) (final results of administrative review).  Commerce determined Hilltop impeded the Sixth Review by repeatedly failing to disclose its five-year affiliation with Ocean King and by denying the affiliation until Commerce placed irrefutable evidence on the record. Id. at 53,859.  Further, Commerce found Hilltop's misrepresentations rendered the entirety of its submissions unusable and therefore the company failed to rebut the presumption that it was part of the China-wide entity, as required for separate rate status.  Accordingly, instead of a separate rate, Hilltop was assigned the China-wide rate of 112.81%, which was based on AFA.

Id. at 1346.

A few months later, on December 12, 2012, Viet I-Mei submitted a letter requesting that "the Department rescind its October 17, 2012 notice announcing that it would reconduct the 2008-2009 administrative review for Grobest. . . . due to the significant management, personnel and accounting changes that have occurred at Viet I-Mei since the period of review . . . ." See Letter from Thompson Hine LLP to U.S. Department of Commerce, Case No. A-552-802 (Dec. 12, 2012) ("Rescission Request") at 2, JA at 3275 (footnotes omitted).  Viet I-Mei further stated that "the administrative and legal costs of this examination are greater than the company wishes to incur at this time." Id.  Viet I-Mei provided no further explanation or discussion regarding the nature of these "changes" or the basis for the company's determination that it wished to expend no further resources on the proceeding.

5

On January 15, 2013, Commerce issued a supplemental questionnaire to Grobest, directing the company to respond by January 29, 2013.  See Letter from S. Fullerton, U.S. Department of Commerce, to Grobest & I-Mei Industrial (Vietnam) Co., Ltd., Case No. A-552-802 (Jan. 15, 2013) ("Supp. Questionnaire"), JA at 3251-56.  Among other items, the fourteenth question of the supplemental questionnaire requests Viet I-Mei to:

> Please provide a chart beginning with the period of investigation, and for each period of review, through the present review, provide a list of Grobest's affiliates (with the relevant address for each), whether or not such affiliates are located in Vietnam.

Id. at 5 ¶ 14, JA at 3255.  In a letter filed on January 29, 2013, Viet I-Mei declined to provide "submission specific responses to the supplemental questionnaire," and declined to provide any further explanation for its refusal to do so.  Letter from Hughes Hubbard & Reed LLP to Sec'y of Commerce, Case No. A-552-802 (Jan. 29, 2013) ("Viet I-Mei Jan. 2013 Response"), JA at 3290.  Commerce thereafter reissued the supplemental questionnaire directing the company to respond by February 13, 2013.  See Letter from S. Fullerton, U.S. Department of Commerce, to Grobest & I-Mei Industrial (Vietnam) Co., Ltd., Case No. A-552-802 (Feb. 6, 2013) ("Resent Supp. Questionnaire") at 1, JA at 3264.

On February 13, 2013, Viet I-Mei filed a letter stating:

6

> As Viet I-Mei has stated in its previous submissions, the company is unable to continue with the examination of Grobest's voluntary responses due to the significant management, personnel and accounting changes that have occurred at Viet I-Mei since the period of review (which dates back to February 2008). The administrative and legal costs of this examination are greater than the company wishes to incur at this time.

<u>See</u> Letter from Hughes Hubbard Reed LLP to Sec'y Commerce, Case No. A-552-802 (Feb. 13, 2013) ("Viet I-Mei Feb. 2013 Response"), JA at 3296. Grobest, again, provided no further explanation or discussion regarding the nature of these "changes" or the basis for the company's determination that it wished to expend no further resources on the proceeding.

Viet I-Mei thereafter submitted a short case brief arguing for rescission of the individual examination of Grobest but, again, provided no further explanation or discussion regarding the nature of these "changes" or the basis for the company's determination that it wished to expend no further resources on the proceeding. Case Brief on Behalf of Viet I-Mei Frozen Foods Co., Ltd., Case No. A-552-802, appended to Letter from Hughes Hubbard Reed LLP to Sec'y Commerce (Nov. 4, 2013) at 5, JA at 3339-47. In response, AHSTAC filed a rebuttal brief arguing, amongst other things, that:

> Grobest's failure to cooperate in this reconducted review that it sought to obtain should be understood in the context of the likely consequences of having to answer the Department's specific inquiry

7

as to affiliation status.  Grobest's U.S. importer, Ocean Duke, was
found to have committed material misrepresentation in multiple
reviews of the antidumping duty order on shrimp from China by
failing to disclose its affiliates – including another affiliate in Vietnam
– that likely served as a conduit to evade duties on shrimp from both
China and Vietnam.

Rebuttal Brief on Behalf of Ad Hoc Shrimp Trade Action Committee appended to

Letter from Picard Kentz & Rowe LLP to Sec'y Commerce, Case No. A-552-802

(Nov. 12, 2013), JA at 3357.

### C.     CIT Appeal of the Re-conducted AR4

With the administrative record closed, Viet I-Mei submitted a brief to the

CIT providing additional explanation regarding the nature of its corporate

"changes" and the basis for the company's determination that it wished to expend

no further resources on the proceeding, stating:

> By the time Grobest & I-Mei was granted its right to individual
> examination by this Court on September 13, 2012, however, more
> than two years had passed since Commerce's Final Results that were
> issued on August 9, 2010.  During that time, on December 31, 2010,
> the shrimp processing operation of Grobest & I-Mei was purchased by
> Viet I-Mei as a result of a break up between the former joint venture
> partners.  Viet I-Mei sought to withdraw Grobest & I-Mei as a
> voluntary respondent because Viet I-Mei had undergone "significant
> management, personnel and accounting changes," and, accordingly,
> "the administrative and legal costs of th[e] examination [were] greater
> than the company wishe[d] to incur . . . ."  Letter from Viet I-Mei to
> the Department of Commerce, regarding *Frozen Warmwater Shrimp*
> *from the Socialist Republic of Vietnam:* Withdrawal of Request for
> Voluntary Respondent Review and Revocation of Antidumping Duty

8

Order in Part," A-552-802, POR 2/1/08-1/31/09 (Dep't of Commerce
Dec. 12, 2012) . . . . Viet I-Mei was no longer confident of its ability
to guarantee the provision of complete and accurate data to Commerce
because much of the relevant support documentation would be
difficult to obtain due to the change in management and ownership.
Accordingly, Viet I-Mei submitted a request to withdraw Grobest & I-
Mei as a voluntary respondent from the review.

Plaintiff's Memorandum in Support of Rule 56.2 Motion for Judgment on the

Agency Record (Aug. 20, 2014) at 17, JA at 3424.

In turn, the CIT addressed this testimony in its decision, observing that:

Here, Grobest contends that it sought to withdraw as a voluntary
respondent because "on December 31, 2010, the shrimp processing
operation of Grobest & I-Mei was purchased by Viet I-Mei," and
"Viet I-Mei was no longer confident of its ability to guarantee the
provision of complete and accurate data to Commerce because much
of the relevant support documentation would be difficult to obtain due
to the change in management and ownership." But as Defendant
points out, this change of ownership occurred nearly *two years* prior
to the entry of judgment, in favor of Grobest, on its initial request for
individual examination. In that time, Grobest could easily have
voluntarily dismissed its litigation in demand of individual
examination (thereby obtaining the very result that Grobest now
seeks), but chose not to do so.

Viet I-Mei Frozen Foods, 83 F. Supp. 3d at 1356-57 (footnotes omitted; emphasis

in original), JA at 16. In a separate footnote, the CIT acknowledged AHSTAC's

arguments regarding Ocean Duke and the fact that Commerce had declined to

accept them:

9

Commerce also requested clarification with regard to discrepancies in Grobest's reported "quantity and value of shipments to [Grobest's] affiliated importer . . . ." Id. at ¶ 1. Defendant-Intervenor Ad Hoc Shrimp Trade Action Committee points out that this importer was also implicated in proceedings involving a separate antidumping duty order on frozen warmwater shrimp from the People's Republic of China, in which Commerce found this importer to have been involved in the provision of misinformation sufficient to impeach the credibility of the (Chinese) exporter/producer at issue in those proceedings. See Def.-Intervenor Ad Hoc Shrimp Trade Action Comm.'s [Conf. & Pub.] Resp. to Pl.'s USCIT Rule 56.2 Mot. For J. on the Agency R. ECF Nos. 36 (conf. version) & 37 (pub. version) ("Def.Int.'s Br.") at 10-12 (discussing findings made during the sixth administrative review of the antidumping duty order on frozen warmwater shrimp from the People's Republic of China); cf. Certain Frozen Warmwater Shrimp from the People's Republic of China, 77 Fed. Reg. 53,856, 53,856 n.2 (Dep't Commerce Sept. 4, 2012) (final results, partial rescission of sixth antidumping duty administrative review and determination not to revoke in part) and accompanying Issues & Decision Mrm., A-570-893, ARP 10-11 (Aug. 27, 2012); Ad Hoc Shrimp Trade Action Comm. v. United States, __ CIT __, 992 F. Supp. 2d 1285 (2014) (discussing the relevant facts and legal determinations). But see Reconducted AR4 Final I&D Mem. cmt. 2 at 7 ("With regard to Domestic Producers' allegation that Grobest's lack of cooperation should be viewed in light of [this context], Domestic Producers referenced the information that is on the record of another proceeding, but did not place it on the record of this review. Therefore, we do not find that this re-conducted administrative review is the correct venue to address this allegation.").

Id. at 1352 n.23, JA at 12.

## IV.    SUMMARY OF THE ARGUMENT

Commerce acted properly by declining Viet I-Mei's request to rescind the

individual review of Grobest as a voluntary respondent. First, Commerce properly

complied with the CIT's <u>Final Judgment</u> in conducting an individual examination of Grobest, despite Viet I-Mei's request that this examination be stopped.  Second, Commerce's decision to continue with the individual examination of Grobest despite Viet I-Mei's request that the examination be halted was in accord with the statute, the agency's regulations, and the agency's practice.  Conversely, the law does not support the contention that a foreign exporter selected as a voluntary respondent may control Commerce's conduct of an individual examination.  Third, the law does not support the contention that Commerce was required to balance the interests of Viet I-Mei with the interests of the agency in continuing the individual examination.  To the extent this claim has any merit, Viet I-Mei improperly presents facts in support of its arguments that were not before either Commerce or the Court of International Trade.

Further, Commerce properly determined to assign Grobest the same margin as the Vietnam-wide entity as each statutory prerequisite for the application of AFA was satisfied because of the respondent's total failure to provide any substantive response to Commerce's inquiries.  Further, contrary to Grobest's contentions, the selected AFA rate is proper.

11

## V.  ARGUMENT

### A.  Standard of Review

The Court reviews "the Court of International Trade's judgment, affirming or reversing the final results of an administrative review, de novo." Huvis Corp. v. United States, 570 F.3d 1347, 1350 (Fed. Cir. 2009) (quoting Fag Kugelfischer Georg Schafer AG v. United States, 332 F.3d 1370, 1372 (Fed. Cir. 2003)).  The Court applies "anew the same standard used by the court, and will uphold Commerce's determination unless it is unsupported by substantial evidence on the record, or otherwise not in accordance with law." Id. (quoting Yancheng Baolong Biochem. Prods. Co. v. United States, 337 F.3d 1332, 1333 (Fed. Cir. 2003) (citation and internal quotation marks omitted)); accord Ningbo Dafa Chem. Fiber Co. v. United States, 580 F.3d 1247, 1253 (Fed. Cir. 2009).

Notwithstanding the de novo legal standard, deference should be afforded to both the CIT and Commerce.  This Court recognizes that the CIT "has expertise in addressing antidumping issues and deals on a daily basis with the practical aspects of trade practice." Int'l Trading Co. v. United States, 281 F.3d 1268, 1274 (Fed. Cir. 2002).  With respect to Commerce, this Court similarly recognizes that:

> factual determinations supporting anti-dumping margins are best left
> to the agency's expertise. . . .  {I}t is within Commerce's discretion to
> choose which sources and facts it will rely on to support an adverse

12

> inference when a respondent has been shown to be uncooperative. Particularly in the case of an uncooperative respondent, Commerce is in the best position, based on its expert knowledge of the market and the individual respondent, to select adverse facts that will create the proper deterrent to non-cooperation with its investigations and assure a reasonable margin.

F.lli. de Cecco di Filippo Fara S. Martino S.p.A. v. United States, 216 F.3d 1027,

1032 (Fed. Cir. 2000).

### B.    Commerce Properly Denied Viet I-Mei's Request to Rescind the Individual Examination of Grobest

Viet I-Mei's claims that Commerce improperly denied the company's

request to halt the individual examination of Grobest are without merit and, for the

reasons provided below, should be rejected by this Court.

### 1.    Commerce Appropriately Complied With the Final Judgment through the Individual Examination of Grobest

Commerce appropriately complied with the CIT's Final Judgment by

continuing to individually examine Grobest in the re-conducted AR4.  The

language of the Final Judgment is mandatory:  "the Department of Commerce shall

. . . re-conduct its administrative review of the anti-dumping order . . . by

individually examining Grobest as a voluntary respondent."  Final Judgment at 1,

JA at 3246.  Commerce was clear that "because the CIT specifically ordered the

Department to conduct an individual examination of Grobest, rescission would be

in conflict with the CIT's order and judgment."  Re-conducted IDM at 4, JA at

3377.  In sum, the CIT ordered Commerce to re-conduct the administrative review to individually examine Grobest as a voluntary respondent and the agency complied with that order.

Viet I-Mei's claims to the contrary should be dismissed.  Viet I-Mei argues that Commerce's understanding of the <u>Final Judgment</u> was legally erroneous and that the agency "now attempts to use the Final Judgment as a sword in order to justify its decision to continue the 'voluntary' examination against the wishes of Viet I-Mei."  Viet I-Mei Appellant Brief at 20.  Viet I-Mei claims that the mandatory language of the <u>Final Judgment</u> is best understood as being contingent upon how the company, as plaintiff, seeks enforcement, asserting that "the Final Judgment in Grobest II did not require Commerce to continue with the individual examination if Viet I-Mei did not want to continue," and that "{t}he order in the Final Judgment . . . required individual examination to the extent that it wished to be individually examined."  <u>Id.</u> at 20, 23.  Viet I-Mei further argues that the company, wholly of its own discretion, may unilaterally "relieve Commerce of the burden by relinquishing the right to individual examination given to it by the court's judgment."  <u>Id.</u> at 20.

In order to escape the mandatory language of the <u>Final Judgment</u>, Viet I-Mei asserts that because "the Final Judgment removed the reconducted review from the

14

purview of the CIT and placed it squarely under Commerce's administrative authority," the agency was not obligated to conduct the individual re-examination of Grobest. Id. at 21. But this argument is fallacious. The CIT entered the <u>Final Judgment</u> because there was no need for continued remand proceedings as the court in <u>Grobest II</u> had granted the very relief Grobest sought by ordering an individual re-examination of Grobest as a voluntary respondent and possible reconsideration of revocation. A final judgment or order is one that "ends the litigation on the merits and leaves the nothing for the court to do but execute judgment." <u>RHI Refractories Liaoning Co. v. United States</u>, 752 F. Supp. 2d 1377, 1379 (Ct. Int'l Trade 2011) (citing <u>Firestone Tire & Rubber Co. v. Risjord</u>, 449 U.S. 368, 373 (1981)). The circumstances of the proceeding made it entirely appropriate for the court to enter a final judgment, with an order that the agency re-conduct the administrative review to engage in an individual examination of Grobest. The CIT's <u>Final Judgment</u> afforded no basis for the agency to decline to carry out the court's order.

Moreover, Viet I-Mei misconstrues the CIT's <u>Final Judgment</u>. Contrary to Viet I-Mei's contentions, the CIT did not place any conditions or limitations to its <u>Final Judgment</u> when it expressly ordered the agency to examine Grobest individually. In its brief to this Court, Viet I-Mei quotes the CIT's opinion as

15

observing that "had Commerce been inclined to accept Grobest's request to discontinue the re-examination, the parties could have moved under USCIT R. 60(b)(6) for relief from judgment order in <u>Grobest II</u>."  Viet I-Mei Appellant Brief at 20-21 (quoting <u>Viet I-Mei Frozen Foods</u>, 83 F. Supp. 3d at 1361, n. 83).  Using this quote, Viet I-Mei contends that "{c}ontrary to Commerce's assertions, its hands were not tied by the Final Judgment."  <u>Id.</u> at 21.  But the beginning part of the truncated sentence quoted by Viet I-Mei establishes that, in the absence of seeking relief under USCIT R. 60(b)(6), Commerce's hands were tied: "Although Commerce accurately states that it was required by this Court's judgment in Grobest II to conduct the individual re-examination of Grobest . . . ."  <u>Viet I-Mei Frozen Foods</u>, 83 F. Supp. 3d at 1361, n. 83, JA at 21.

Because Commerce was required by the Court's <u>Final Judgment</u> to conduct the individual re-examination, Viet I-Mei would have had to seek relief from the <u>Final Judgment</u> through a USCIT R. 60(b) motion – something Viet I-Mei failed to do.  <u>See</u> <u>DaimlerChrysler Corp. v. United States</u>, 30 Ct. Int'l Trade 1945 (2006) (denying the motion based on USCIT R. 15(a) to amend pleadings where final judgment had been issued as "{t}he court knows of no basis to relieve a party of the effects of a final judgment based solely on USCIT R. 15(a).  Relief from judgment is governed by USCIT R. 60, which {had} not been asserted here.").

16

Notably missing from Viet I-Mei's presentation to this Court is any explanation for why the company failed to file a USCIT R. 60(b) motion for relief from the CIT's judgment in <u>Grobest II</u>.  Viet I-Mei simply declined to pursue such relief and, as such, failed to take any step that might have relieved Commerce of its obligations under the CIT's <u>Final Judgment</u>.

## 2.  Foreign Exporters Do Not Control the Conduct of Individual Examinations of Voluntary Respondents

Viet I-Mei objects to any contention that a domestic industry interested party can control Commerce's determination of whether to continue to conduct individual examination of a voluntary respondent that has decided it no longer wishes to be individually examined:

> There simply is no rationale for providing petitioners with the exact same 'veto' power over requests to withdraw requests for voluntary examination like petitioners have in the context of complete rescission of the review.

Viet I-Mei Appellant Brief at 27.  Viet I-Mei's objection to domestic industry control over the conduct of an individual examination of a voluntary respondent is rooted in the company's arguments regarding Commerce's regulation found at 19 C.F.R. § 351.213(d)(1).  Viet I-Mei argues that Commerce committed an error of law because the agency "and apparently the CIT, incorrectly and unreasonably relied on 19 C.F.R. § 351.213(d)(1) to support the position that Petitioner's request

that {Grobest} be included in the review precluded Commerce from discontinuing the voluntary examination." Id. at 23.

But Viet I-Mei misconstrues Commerce's discussion of this regulation.  The agency did not assert that a domestic interested party controlled whether an individual examination continued, the agency simply explained the irrelevance of 19 C.F.R. § 351.213(d)(1) to Viet I-Mei's request:

> With respect to Grobest's argument that the Department should rescind the individual review pursuant to 19 CFR 351.213(d)(1), we disagree.  Even if Grobest properly withdrew its request for review within 90 days of the date of initiation of the review (which it did not), the regulation does not provide for authority to rescind the review, because Petitioners requested that the Department review Grobest and did not withdraw their request for review.

Re-conducted IDM at 4, JA at 3377 (footnote omitted).

Because Commerce's regulation at § 351.213(d)(1) is irrelevant, to succeed in its appeal Viet I-Mei must establish that a voluntary respondent has total control over whether an individual examination proceeds or is halted.  In its attempt to meet this burden, Viet I-Mei asserts that the statute bestows "a right, not an obligation" of individual examination as a voluntary respondent and that "the fundamental concept {is} that voluntary review is *voluntary*."  Viet I-Mei Appellant Brief at 22-23 (citing 19 U.S.C. § 1677m(a)) (emphasis in original). Because of this right, Viet I-Mei claims that "{t}he order in the Final

18

Judgment . . . thus required individual examination only to the extent that it wished." Id. at 23.

Viet I-Mei's assertions are unsupported by the language of the statute, the agency's regulations, and agency practice. The law, through 19 U.S.C. § 1677m(a), unambiguously instructs that Commerce "shall establish . . . an individual weighted dumping margin" for respondents satisfying the criteria, such as Grobest in AR4. 19 U.S.C. § 1677m(a); Grobest & I-Mei Indus. (Vietnam) Co. v. United States, 815 F. Supp. 2d 1342, 1363 (Ct. Int'l Trade 2012). Even if § 1677m(a) is construed as granting an exporter or producer a "right" to individual examination as a voluntary respondent, the fact that a voluntary respondent may be entitled to individual examination has no bearing on how Commerce conducts that individual examination. The plain language of the statute includes no discussion as to whether a voluntary respondent may, on its own volition, preclude Commerce from establishing an individual weighted dumping margin for that respondent.

To the extent that the statute is ambiguous regarding the treatment of a voluntary respondent once selected for individual review, the agency's regulations address the ambiguity. Under the Chevron framework of analysis, if a statutory term "is ambiguous, the {agency's} regulation implementing {it} 'is binding in the courts unless procedurally defective, arbitrary or capricious in substance, or

19

manifestly contrary to the statute.'" Doe v. United States, 372 F.3d 1347, 1359

(Fed. Cir. 2004) (quoting Household Credit Servs. v. Pfennig, 541 U.S. 232 (2004)

(internal quotation omitted)).  Here, Commerce's regulations establish that once a

voluntary respondent has been accepted for individual examination, it is subject to

the same requirements as the mandatory respondents:

> {a} voluntary respondent accepted for individual examination . . . will
> be subject to the same requirements as an exporter or producer
> initially selected by the Secretary for individual examination under
> section 777A(c)(2) or section 777A(e)(2)(A) of the Act, including the
> requirements of section 782(a) of the Act and, where applicable, the
> use of the facts available under section 776 of the Act and § 351.308.

19 C.F.R. § 351.204(d)(2).  Commerce's practice in administrative proceedings is

in accord with the regulation:

> {W}e are selecting Bluestar as a voluntary respondent.  Bluestar will
> be subject to the same requirements as the mandatory respondents
> selected pursuant to section 777A(e)(2)(A) of the Act, including
> section 782(a) of the Act and, where applicable, the use of facts
> available under section 776 of the Act and 19 CFR 351.308.

Decision Memorandum (at 4) accompanying Countervailing Duty Investigation of

1,1,1,2 – Tetrafluoroethane from the People's Republic of China, 79 Fed. Reg.

21,895 (Dep't of Commerce Apr. 18, 2014) (preliminary affirmative determination

and alignment of final determination with final antidumping determination).  The

CIT has also recognized that voluntary respondents are subject to the same

20

requirements as mandatory respondents and has observed that "voluntary respondents {thus} must submit the same information required from mandatory respondents, on the same timetable." <u>Tung Fong Indus. Co. v. United States</u>, 28 Ct. Int'l Trade 459 (2004) (citing 19 U.S.C. § 1677m(a) and 19 C.F.R. § 351.204(d)(2)); <u>see also</u> <u>Longkou Haimeng Machinery Co., Ltd. v. United States</u>, 581 F. Supp. 2d 1344, 1348-49 (Ct. Int'l Trade 2008) ("once selected, a voluntary respondent would be subject to the same requirements as mandatory respondents, including the use of facts available under 19 U.S.C. § 1677e.").

Commerce treats both voluntary and mandatory respondents the same when a respondent declines to participate further in an administrative proceeding. Commerce will not grant separate rate status to mandatory respondents that cease participating in an administrative review. <u>See</u> Issues and Decision Memorandum (Cmt. 2) ("<u>Wooden Bedroom Furniture IDM</u>") accompanying <u>Wooden Bedroom Furniture from the People's Republic of China</u>, 79 Fed. Reg. 51,954 (Dep't of Commerce Sept. 2, 2014) (final results of antidumping duty administrative review and new shipper review; 2012) ("<u>Wooden Bedroom Furniture from China</u>"). Commerce explained the basis for its practice in the <u>Wooden Bedroom Furniture IDM</u> as follows:

21

> {m}andatory respondents may not dictate their level of participation
> for the purposes of determining a more favorable separate
> rate . . . After providing separate rate information, a mandatory
> respondent could cease participating in a proceeding . . ., believing
> that its own data may result in a higher antidumping duty margin than
> if it simply participated as a separate-rate respondent. Thus . . .
> {respondent} cannot participate in one aspect of the review, while
> simultaneously failing to provide complete, accurate and verifiable
> data with respect to other required elements of that review.

Id. (footnotes omitted).  Consistent with this practice, Commerce applies facts

available to voluntary respondents that refuse to participate further in an

administrative proceeding.  In Certain Cold-Rolled Carbon Steel Flat Products

from Sweden ("Carbon Steel from Sweden"), Commerce explained that a

voluntary respondent was subject to the same requirements as that of a mandatory

respondent and applied facts available to calculate the dumping margin where the

voluntary respondent withdrew its participation from the proceeding:

> We note that 19 CFR 351.204(d)(2) of the Department's regulations
> states that "A voluntary respondent accepted for individual
> examination under subparagraph (d)(1) of this section will be subject
> to the same requirements as an exporter or producer initially selected
> by the Secretary for individual examination . . ." . . . Sandvik
> withdrew its participation in this investigation subsequent to being
> accepted as a voluntary respondent . . . Thus, because Sandvik failed
> to provide the necessary information requested by the Department and
> significantly impeded the proceeding, pursuant to section 776(a)(2)(B)
> and (C) of the Act, we have applied the FA to calculate the dumping
> margin.

22

Certain Cold-Rolled Carbon Steel Flat Products from Sweden, 67 Fed. Reg.
31,251, 31,253 (Dep't of Commerce May 9, 2002) (notice of preliminary
determination of sales at LTFV) (unchanged in final determination).

There is no meaningful difference between the facts presented in Carbon
Steel from Sweden and those presented by Viet I-Mei here.  In both, a company
that had been selected as a voluntary respondent for individual examination failed
to provide the necessary information requested by the Department.  In both, the
failure to provide this information significantly impeded the proceeding.
Moreover, just like the mandatory respondent in Wooden Bedroom Furniture from
China, Viet I-Mei is attempting to force Commerce to assign a separate rate
dumping margin by refusing to participate further in the agency's individual
examination.  In both instances, the respondent is asking the agency to accede to its
demands after declining to respond to Commerce's inquiries.

Accordingly, there can be no serious dispute that Commerce "is therefore
correct that voluntary respondents are not entitled to unilaterally dictate their level
of participation once accepted for individual examination."  Viet I-Mei Frozen
Foods, 83 F. Supp. 3d at 1358, JA at 18.  An interested party seeking voluntary
respondent status cannot dictate the terms under which Commerce conducts its
individual examination.  Commerce's determination to decline Viet I-Mei's

23

request to end the individual examination of Grobest is fully in accordance with the statute, the agency's regulations and the agency's previous practice.

### 3. Viet I-Mei's Arguments Regarding a Balancing Test Are Erroneous

Viet I-Mei asserts that Commerce "abused its discretion by committing a clear error in judgment." Viet I-Mei Appellant Brief at 28. To demonstrate "a clear error in judgment," Viet I-Mei claims that Commerce should have weighed "the wishes of the party seeking rescission against the administrative interest in preventing abuses and waste of agency resources." Id. Viet I-Mei argues that, by way of analogy, the balancing test reflected in 19 C.F.R. § 351.213(d)(1) and the Preamble "serves as a useful guide" to evaluate Commerce's response to the company's request to end the individual examination of Grobest. Id. at 25.

However, the alleged balancing test is baseless. The CIT appropriately rejected Viet I-Mei's efforts to encumber Commerce with legal obligations found nowhere in the statute, the agency's regulations, or agency practice. See Viet I-Mei Frozen Foods, 83 F. Supp. 3d at 1359-60, JA at 19.

Viet I-Mei nevertheless continues to assert that, in the context of the application of its constructed balancing test, "{a} consideration of the relevant facts clearly shows that Viet I-Mei's request should have been granted." Viet I-

24

Mei Appellant Brief at 31.  However, for the first time before this Court, Viet I-Mei has sought to introduce purportedly relevant facts that are asserted to warrant consideration.

In particular, Viet I-Mei's Appellant Brief references the first letter from the company to Commerce asserting that it had experienced "significant management, personnel, and accounting changes . . . since the period of review."  <u>See</u> Rescission Request at 2, JA at 3275; Viet I-Mei Appellant Brief at 15.  Now, Viet I-Mei states that these changes "occurred gradually as personnel left the company and documents were moved over time," and that the impact of these gradual changes was "only fully realized after the Final Judgment had finally recognized Grobest & I-Mei's right to voluntary examination."  Viet I-Mei Appellant Brief at 15-16.  Viet I-Mei also states that "the negative effects of the corporate and personnel changes that had occurred over the course of nearly two years were only fully realized following the completion of litigation in *Grobest I* and *Grobest II*."  <u>Id.</u> at 16 n.4.  The factual characterizations (1) that changes "occurred gradually" and (2) that the impact of these changes was "only fully realized" after <u>Grobest II</u> are provided without citation and have no basis in the administrative record or in the litigation before the Court of International Trade.  Yet, in pressing for the application of a balancing test, Viet I-Mei asserts:

25

> Grobest & I-Mei had fought long and hard for its right to be
> individually examined as a voluntary respondent, believing that it was
> going to get "three zeros revocation" as a result of its individual
> examination. During the time spent litigating Commerce's unlawful
> decision to refuse to individually examine Grobest & I-Mei in the first
> instance, the shrimp processing operation of Grobest & I-Mei was
> purchased by Viet I-Mei as a result of a breakup between former joint
> venture partners. It was only after the litigation in *Grobest I* and
> *Grobest II* wrapped up that it became clear that, as a result of the
> changes in management and ownership due to the breakup, Viet I-Mei
> would no longer be confident in its ability to guarantee the provision
> of complete and accurate data to Commerce.

Id. at 37. No such details were presented by Viet I-Mei to Commerce in the

proceeding below.

In contrast, AHSTAC had presented argument to Commerce that Viet I-

Mei's refusal to participate "should be understood in the context of the likely

consequences of having to answer the Department's specific inquiry as to

affiliation status." Rebuttal Brief on Behalf of Ad Hoc Shrimp Trade Action

Committee appended to Letter from Picard Kentz & Rowe LLP to Sec'y

Commerce, Case No. A-552-802 (Nov. 12, 2013), JA at 3357. AHSTAC

specifically and explicitly referred to Commerce's findings regarding Ocean

Duke's identification of affiliates in another proceeding before the agency. Id., JA

at 3369-70. Commerce acknowledged that these arguments had been presented in

its Issues and Decision Memorandum accompanying the Final Results:

26

> With respect to Domestic Producers' allegation that Grobest's lack of cooperation should be viewed in light of the scheme to evade antidumping duties by shipping Vietnamese shrimp through Cambodia and declaring it to be the product of Cambodia, Domestic Producers referenced the information that is on the record of another proceeding, but did not place it on the record of this review. Therefore, we do not find that this re-conducted administrative review is the correct venue to address this allegation. However, we take this allegation seriously and intend to consider whether it would be appropriate to otherwise address it in the context of this antidumping duty order.

Re-conducted IDM at 7, JA at 3380. Viet I-Mei's discussion of relevant facts omits any reference to developments with respect to the U.S. importer affiliate.

Thus, in arguing for the application of a balancing test, Viet I-Mei simultaneously seeks to present novel facts to this Court while declining to address other facts that had been presented to Commerce in the underlying administrative proceeding. In result, the discussion of the fictional balancing test is absurdly skewed toward the interests of Viet I-Mei. Had Viet I-Mei presented a fulsome description of the purported changes experienced by the company and the impact of these changes on its operations, Commerce might have considered them. However, even in that hypothetical scenario – one not presented here because Viet I-Mei did not provide such a description – Commerce might have also considered the relevance of its findings, in separate administrative proceedings, regarding the U.S. importer affiliate. On this administrative record, Commerce was presented

27

with facts regarding the U.S. importer affiliate but declined to give weight to these facts in its determination because AHSTAC "did not place" the administrative record of another proceeding on the record of this administrative proceeding.  In contrast, Viet I-Mei made no effort to present Commerce with factual contentions regarding the "gradual" nature of corporate changes or the timing for when (and how) the impact of these changes was felt.  Instead, Viet I-Mei refused to answer Commerce's questions.

### C.    Commerce Properly Applied AFA to Assign Grobest the Same Dumping Margin as the Vietnam-wide Entity

#### 1.  Each Statutory AFA Prerequisite Is Satisfied

Commerce properly applied AFA to assign Grobest the same dumping margin assigned to the Vietnam-wide entity.  Re-conducted IDM at 6-7, JA at 3379-80.  Commerce's application of the "facts otherwise available" is warranted. Grobest eschewed responding to Commerce's Supp. Questionnaire that asked for, inter alia, updated affiliation information by a renewed request to rescind. Compare Supp. Questionnaire, JA at 3251-56, with Viet I-Mei Jan. 2013 Response, JA at 3289-90.  Commerce determined to continue its examination and resent its Supp. Questionnaire, this time including a specific warning that it would use FA if Grobest continued to be "non-responsive."  Resent Supp. Questionnaire

28

at 1, JA at 3264.  Disregarding Commerce's warning, Grobest again refused to answer, instead reiterating its rescission request.  Viet I-Mei Feb. 2013 Response, JA at 3295-3301.  Grobest accordingly met each of the four statutory FA criteria under 19 U.S.C. § 1677e(a)(2) – with any one of them alone being sufficient to support Commerce's finding – by failing to provide Commerce with any substantive response and declining to submit necessary information.

Commerce's further determination that Grobest "failed to cooperate by not acting to the best of its ability to comply with a request for information" is also supported with substantial evidence.  19 U.S.C. § 1677e(b); Re-conducted IDM at 6-7, JA at 3379-80.  Viet I-Mei could and should have provided the requested information while maintaining its legal position as to rescission.  Essar Steel Ltd. v. United States, 721 F. Supp. 2d 1285, 1289-1299 (Ct. Int'l Trade 2010), aff'd in relevant part, 678 F.3d 1268 (Fed. Cir. 2012) (respondent "should have produced" information it deemed irrelevant in "the event that Commerce reached a different conclusion").  Viet I-Mei instead failed to produce any information requested in Supp. Questionnaires; as a result, "necessary information to fully review Grobest is not on the record."  Decision Memorandum ("Re-conducted Preliminary Decision Memo.") accompanying Certain Frozen Warmwater Shrimp from the Socialist Republic of Vietnam, 78 Fed. Reg. 57,352 (Dep't of Commerce Sept. 18, 2013)

29

(preliminary results of re-conducted administrative review of Grobest & I-Mei

Industrial (Vietnam) Co., Ltd. and intent not to revoke; 2008-2009) at 8, JA at

3314.

Viet I-Mei claims that gradual corporate changes impacted "Viet I-Mei's

ability to provide and certify the necessary information to properly participate in

the examination . . . ."  Viet I-Mei Appellant Brief at 15.  Commerce's practice

does not contemplate perfection in the ability to respond to inquiries.  See Nippon

Steel Corp. v. United States, 337 F.3d 1373, 1382 (Fed. Cir. 2003) ("While the

standard does not require perfection and recognizes that mistakes sometimes occur,

it does not condone inattentiveness, carelessness, or inadequate record keeping.");

Ta Chen Stainless Steel Pipe, Inc. v. United States, 298 F.3d 1330, 1336 (Fed. Cir.

2002) (holding that Commerce reasonably expected importer to preserve records);

Shandong Huarong Gen. Group Corp. v. United States, 27 Ct. Int'l Trade 1568,

1590-91 (2003); Tianjin Mach. Imp. & Exp. Corp. v. United States, 353 F. Supp.

2d 1294, 1299 (Ct. Int'l Trade 2004) (quoting Shandong Huarong Gen. Group

Corp. v. United States); accord Hebei Metals & Minerals Imp. & Exp. Corp. v.

United States, 29 Ct. Int'l Trade 1204, 1211 (2005).  Nevertheless, the

administrative record is bereft of any evidence of Viet I-Mei attempting to provide

any information – imperfect, incomplete, or otherwise – in response to

30

Commerce's supplemental questionnaire.  Accordingly, Viet I-Mei's egregious

noncompliance constitutes "behavior below the standard for a reasonable

respondent" and fully justifies Commerce's decision to apply AFA.  Fujian Mach.

& Equip. Imp. & Exp. Corp. v. United States, 276 F. Supp. 2d 1371, 1379 (Ct. Int'l

Trade 2003) (citing Reiner Brach GmbH & Co. KG v. United States, 206 F. Supp.

2d 1323, 1337-38 (Ct. Int'l Trade 2002) (upholding choice of AFA against

respondent who failed to provide information about home market sales and

assumed that the information it submitted was sufficient, and supplied vague

answers to other questions)).

## 2.  Commerce's Selected AFA Rate Is Proper

Viet I-Mei claims that "the AFA rate of 25.76 percent was punitive because

it is far beyond commercial reality and any deterrence factor warranted by the facts

of this case."  Viet I-Mei Appellant Brief at 44.  This argument lacks merit.

This Court has long recognized that Commerce has wide discretion in terms

of corroborating an AFA rate: "Commerce enjoys 'particularly great' discretion in

applying an AFA margin to an uncooperative respondent" that the agency employs

as a "proper deterrent to non-cooperation."  KYD, Inc. v. United States, 607 F.3d

760, 765 (Fed. Cir. 2010) (quoting F.lli de Cecco, 216 F.3d at 1032; PAM, S.p.A.

v. United States, 582 F.3d 1336, 1340 (Fed. Cir. 2009)).  With respect to the AFA

rate, Commerce particularly found it appropriate in these circumstances "in that it is sufficient to ensure that Grobest does not benefit from failing to cooperate in our review by refusing to respond to the Department's request for complete information regarding its affiliations, sales of subject merchandise, and factors of production." Re-conducted Preliminary Decision Memo., at 9, JA at 3315. Further, given this rate was derived from petition, Commerce properly performed an extensive corroboration analysis by comparing the 25.76 percent rate to the transaction-specific margins of cooperating mandatory respondents in the AR4, which suggests that it falls within the range of both mandatory respondents' transaction-specific margins. Id. at 9-11, JA at 3315-17; Re-conducted IDM at 7 & n.27, 29, JA at 3380; 19 U.S.C. § 1677e(b)(1),(c) (changes implemented effective after June 29, 2015); Corroboration Memorandums, JA at 3318-3331.

Moreover, Viet I-Mei's assertion that Gallant Ocean (Thail.) Co. v. United States, 602 F.3d 1319 (Fed. Cir. 2010) compels a different outcome is misplaced. As this Court recently observed, "a Commerce determination . . . reflects 'commercial reality' if it is consistent with the method provided in the statute, thus in accordance with law." Nan Ya Plastics Corp. v. United States, 810 F.3d 1333, ___ (Fed. Cir. 2016). This Court further clarified what was meant through reference to "commercial reality":

32

> {t}he court does not use "accurate" and "commercial reality" in some broader sense, such as to require Commerce to apply the statutory methods to determine the industrywide "commercial realities prevailing" during a particular time period. Nor must Commerce "prove a negative" about a respondent's pricing behavior if that respondent fails to provide evidence that would yield more representative calculations of its pricing behavior, . . . for the statute permits Commerce to use adverse facts available in that situation to assign the respondent a margin . . .

Id., at ____ (citations omitted). Moreover, the circumstances of this case are distinguishable from Gallant Ocean. As this Court observed in Nan Ya Plastics Corp., the AFA rate in Gallant Ocean "did not reflect 'commercial reality' because of concerns that the numbers used in the underlying calculations later proved not to be 'credible,' meaning that Commerce had not used a lawful method to assign a dumping margin under § 1677e(b) . . ." Id. at ____ (citing Gallant Ocean, 602 F.3d at 1323-1324). In contrast, here "no information has been presented in the current review that calls into question {the} reliability of {the petition rate} . . . ." Re-conducted Preliminary Decision Memo. at 9-10, JA at 3315-3316.

33

## VI.    CONCLUSION AND STATEMENT OF RELIEF SOUGHT

For the foregoing reasons, AHSTAC respectfully requests that this Court

affirm the CIT's judgment that Commerce in the re-conducted AR4 properly:

(1) declined Viet I-Mei's request to rescind the individual examination of Grobest

as a voluntary respondent; and (2) applied AFA to Grobest.

Respectfully submitted,

/s/ Nathaniel Maandig Rickard
Nathaniel Maandig Rickard
Meixuan (Michelle) Li
Picard Kentz & Rowe LLP
1750 K Street, N.W., Suite 800
Washington, DC 20006
(202) 331-5040

Counsel to Defendant Appellee Ad Hoc
Shrimp Trade Action Committee

February 26, 2016

## PUBLIC CERTIFICATE OF SERVICE
## <u>VIET I-MEI FROZEN FOODS CO., LTD. V. UNITED STATES, 2016-1006</u>

I, Nathaniel Maandig Rickard, hereby certify that, pursuant to Federal Circuit Rule 31(b), a copy of the foregoing Defendant-Appellee's Brief were served on this 26th day of February, 2016, by electronic delivery via the Court's CM/ECF system, on the following parties on the following parties:

### <u>On behalf of the United States of America:</u>

Kara Westercamp, Esq.
**U.S. Department of Justice**
Commercial Litigation Branch
P.O. Box 480
Ben Franklin Station
Washington, DC 20044

### <u>On behalf of Viet I-Mei Frozen Foods Co., Ltd.:</u>

Matthew R. Nicely, Esq.
**Hughes Hubbard & Reed, LLP**
1775 I Street, NW
Suite 700
Washington, DC 20006

/s/ Nathaniel Maandig Rickard
Nathaniel Maandig Rickard
**PICARD KENTZ & ROWE LLP**
*Counsel to Defendant-Appellee Ad Hoc
Shrimp Trade Action Committee*

**<u>Form 19.  Certificate of Compliance with Rule 32(a)</u>**

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME
LIMITATION, TYPEFACE REQUIREMENTS,
AND TYPE STYLE REQUIREMENTS

1. This brief complies with the type-volume limitation of Federal Rule of
   Appellate Procedure 32(a)(7)(B).

   This brief contains <u>7747</u> words, excluding the parts of the brief
   exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Federal Rule of
   Appellate Procedure 32(a)(5) and the type style requirements of Federal
   Rule of Appellate Procedure 32(a)(6).

   This brief has been prepared in a proportionally spaced typeface using
   Microsoft Word 2007 in 14 point font size and Times New Roman type
   style.

/s/ Nathaniel Maandig Rickard
Nathaniel Maandig Rickard
Picard Kentz & Rowe LLP
1750 K Street, N.W., Suite 800
Washington, DC 20006
(202) 331-5040

*Counsel to Defendant-Appellee Ad
Hoc Shrimp Trade Action Committee*

February 26, 2016