IN THE UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

VIET I-MEI FROZEN FOODS CO., LTD.,

Plaintiff-Appellant,
v.
UNITED STATES,
AD HOC SHRIMP TRADE ACTION COMMITTEE,

Defendants-Appellees.

Appeal from the United States Court of International Trade
in case no. 14-cv-00092, Judge Donald C. Pogue.

CORRECTED BRIEF OF DEFENDANT-APPELLEE THE UNITED STATES

OF COUNSEL:

MYKHAYLO GRYZLOV
Senior Attorney
Office of the Chief Counsel for
Trade Enforcement and Compliance
U.S. Department of Commerce
Washington, DC 22030

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney
General

JEANNE E. DAVIDSON
Director

PATRICIA M. MCCARTHY
Assistant Director

KARA MARIE WESTERCAMP
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480, Ben Franklin Station
Washington, D.C. 20044
Tele:  (202) 305-7571
Fax:   (202) 514-8624

March 10, 2016

Attorneys for Defendant-Appellee

# <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ............................................................................i

TABLE OF AUTHORITIES ................................................................ iii

STATEMENT OF RELATED CASES ................................................ vii

STATEMENT OF THE ISSUES .............................................................1

STATEMENT OF THE CASE ................................................................2

STATEMENT OF THE FACTS ..............................................................3

    I.     The Original Administrative Proceeding .............................3

    II.    Judicial Proceedings ...........................................................5

    III.   Administrative Proceeding Post-Final Judgment .................6

    IV.   Subsequent Judicial Proceedings ......................................10

    V.    Trial Court's Holdings ......................................................11

SUMMARY OF THE ARGUMENT ....................................................11

ARGUMENT .......................................................................................13

    I.     Standard Of Review ..........................................................13

    II.    Statutory And Regulatory Background ..............................15

    III.   Commerce's Decision To Continue The Court-Ordered Review Of Grobest Is Supported By Substantial Evidence And In Accordance With Law ...................................................................18

          A.    Commerce Was Not Required To Terminate The Court-Ordered Individual Examination Of Grobest ...........................19

B.       The Trial Court's Final Judgment Required Commerce To
          Examine Grobest Individually ..................................................31

C.       Grobest's Actions Satisfied The Statutory Criteria For Applying
          Facts Available With An Adverse Inference ...........................37

CONCLUSION ......................................................................................44

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*,
  467 U.S. 837 (1984) ........................................................................14

*Consolo v. Fed. Mar. Comm'n*,
  383 U.S. 607 (1966) ........................................................................14

*D & M Watch Corp. v. United States*,
  795 F. Supp. 1160 (Ct. Int'l Trade 1992) ................................... 33, 37

*Essar Steel Ltd. v. United States*,
  678 F.3d 1268 (Fed. Cir. 2012) ......................................................40

*Ferro Union, Inc. v. United States*,
  44 F. Supp. 2d 1310 (Ct. Int'l Trade 1999) ................................ 24, 25

*Frank v. Dep't of Transp.*,
  35 F.3d 1554 (Fed. Cir. 1994) ........................................................40

*Gordon v. United States*,
  117 U.S. 697 (1864) ............................................................ 32, 33, 37

*Grobest & I-Mei Indus. (Vietnam) Co. v. United States*,
  853 F. Supp. 2d 1352 (Ct. Int'l Trade 2012) ............................ 5, 32, 35

*Hubscher Ribbon Corp., Ltd. v. United States*,
  979 F. Supp. 2d 1360 (Ct. Int'l Trade 2014) ....................................35

*JBF RAK LLC v. United States*,
  790 F.3d 1358 (Fed. Cir. 2015) ......................................................27

*KYD, Inc. v. United States*,
  607 F.3d 760 (Fed. Cir. 2010) ........................................................38

*Mittal Steel Point Lisas Ltd. v. United States*,
  548 F.3d 1375 (Fed. Cir. 2008) ......................................................27

*Mukand, Ltd. v. United States*,
    767 F.3d 1300 (Fed. Cir. 2014) ........................................................18

*Nan Ya Plastics Corp. v. United States*,
    810 F.3d 1333 (Fed. Cir. Jan. 19, 2016)................................. 15, 18, 42

*Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*,
    545 U.S. 967 (2005) ........................................................................14

*Nippon Steel Corp. v. United States*,
    337 F.3d 1373 (Fed. Cir. 2003) .................................................. 18, 43

*Norsk Hydro Canada, Inc. v. United States*,
    472 F.3d 1347 (Fed. Cir. 2006) ........................................................13

*PAM S.p.A. v. United States*,
    582 F.3d 1336 (Fed. Cir. 2009) ........................................................39

*Quingdao Sea Line Trading Co. v. United States*,
    766 F.3d 1378 (Fed. Cir. 2014) ........................................................40

*Sage Prods. Inc. v. Devon Indus., Inc.*,
    126 F.3d 1420 (Fed. Cir. 1997) ........................................................40

*Ta Chen Stainless Steel Pipe, Inc. v. United States*,
    298 F.3d 1330 (Fed. Cir. 2002) ........................................................13

*Thai Plastic Bags Indus. Co. v. United States*,
    756 F.3d 1358 (Fed. Cir. 2014) ........................................................15

*Union Steel v. United States*,
    713 F.3d 1101 (Fed. Cir. 2013) .................................................. 13, 14

*United States Steel Corp. v. United States*,
    621 F.3d 1351 (Fed. Cir. 2010) ........................................................16

*United States v. Eurodif S.A.*,
    555 U.S. 305 (2007) ........................................................................14

*United States v. Great Am. Ins. Co. of N.Y.*,
    783 F.3d 1320 (Fed. Cir. 2013) ........................................................37

*Universal Camera Corp. v. NLRB*,
  340 U.S. 474 (1951) ........................................................................14

*Viet-I-Mei Frozen Foods Co. v. United States*,
  83 F. Supp. 3d 1345 (Ct. Int'l Trade 2015)................................. passim

*Yangzhou Bestpak Gifts & Crafts Co. v. United States*,
  783 F. Supp. 2d 1343 (2011) ...........................................................35

## **Statutes**

19 U.S.C. § 1516 ...............................................................................13

19 U.S.C. § 1673 ...............................................................................15

19 U.S.C. § 1673e .............................................................................15

19 U.S.C. § 1675 ........................................................... 6, 15, 25, 38

19 U.S.C. § 1677 ...............................................................................16

19 U.S.C. § 1677e .............................................................. 17, 18, 42

19 U.S.C. § 1677f-1 ............................................................. 4, 15, 16

19 U.S.C. § 1677m................................................................... 17, 20

28 U.S.C. § 2637...............................................................................27

## **Regulations**

19 C.F.R § 308 .................................................................................20

19 C.F.R § 351.204 .................................................................. passim

19 C.F.R § 351.213 .................................................................. passim

19 C.F.R. § 351.309 .........................................................................27

## <u>Administrative Records</u>

*Certain Cold-Rolled Carbon Steel Flat Products from Sweden*,
   67 Fed. Reg. 31,251 (Dep't of Commerce May 9, 2002) ......................................2

*Certain Frozen Warmwater Shrimp from the Socialist Republic of Vietnam*,
   75 Fed. Reg. 12,206 (Dep't of Commerce Mar. 15, 2010)....................................3

*Certain Frozen Warmwater Shrimp from the Socialist Republic of Vietnam,*
   75 Fed. Reg. 47, 771 (Dep't of Commerce Aug. 9, 2010)....................................4

*Certain Frozen Warmwater Shrimp from the Socialist Republic of Vietnam*,
   77 Fed. Reg. 63,786 (Dep't of Commerce Oct. 17, 2012)....................................6

*Certain Frozen Warmwater Shrimp from the Socialist Republic of Vietnam*,
   78 Fed. Reg. 57,352 (Dep't of Commerce Sept. 18, 2013)....................................9

*Certain Frozen Warmwater Shrimp from the Socialist Republic of Vietnam*,
   79 Fed. Reg. 15,309 (Dep't of Commerce Mar. 29, 2014)....................................2

*Notice of Initiation of Administrative Reviews and Requests for Revocation
in Part of the Antidumping Duty Orders on Frozen Warmwater Shrimp from
the Socialist Republic of Vietnam and the People's Republic of China*,
   74 Fed. Reg. 13,178 (Dep't of Commerce Mar. 26, 2009)....................................3

*Wooden Bedroom Furniture from the People's Republic of China*,
   79 Fed. Reg. 51,954 (Dept. of Commerce Sept. 2, 2014)....................................22

## <u>Other Authorities</u>

Uruguay Round Agreements Act, Statement of Administrative Action,
   H.R. Doc. No. 103-316, vol. 1 (1994), *as reprinted in* 1994 U.S.C.C.A.N.
   4040 ......................................................................................... 17, 18

USCIT R. 60 ............................................................................... 10, 33

## **STATEMENT OF RELATED CASES**

Pursuant to Federal Circuit Rule 47.5, defendant-appellee's counsel states that she is unaware of any related case or any case pending in this or any other court that will directly affect or be affected by this Court's decision in this appeal.

2016-1006

IN THE UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

VIET I-MEI FROZEN FOODS CO., LTD.,

Plaintiff-Appellant,

v.

UNITED STATES,
AD HOC SHRIMP TRADE ACTION COMMITTEE,

Defendants-Appellees.

Appeal from the United States Court of International Trade
in case no. 14-cv-00092, Judge Donald C. Pogue.

CORRECTED BRIEF OF
DEFENDANT-APPELLEE THE UNITED STATES

STATEMENT OF THE ISSUES[1]

1.    Whether by failing to raise arguments relating to the "total adverse

facts available" rate of 25.76 percent and its corroboration before the trial court,

---

[1]  Pursuant to Fed. Cir. R. 28(b), we provide counter-statements of the issue, the case, and the facts because we disagree with those of plaintiff-appellant.

Grobest[2] has waived the issue as to whether that rate reflected commercial reality and any deterrence factor warranted by the facts of this case.

2.      Whether Grobest failed to exhaust its administrative remedies by not arguing before the United States Department of Commerce (Commerce) that the agency's efforts "must have been minimal" in undertaking the re-conducted administrative review.

3.      Whether Commerce's decision to individually examine Grobest, in accordance with a final and conclusive judgment of the trial court, is supported by substantial evidence and otherwise in accordance with law.

4.      Whether Commerce's use of total adverse facts available to calculate Grobest's antidumping margin (after Grobest repeatedly refused to provide answers to supplemental questionnaires), was based on substantial evidence and otherwise in accordance with law.

<u>STATEMENT OF THE CASE</u>

Grobest appeals Commerce's decision not to rescind the re-conducted administrative review of the antidumping duty order covering frozen warmwater shrimp from Vietnam for the period of February 1, 2008 through January 31, 2009, that Grobest itself had succeeded obtaining in litigation.  *See Certain Frozen*

---

[2]  This appeal has been filed by Viet I-Mei Frozen Foods Co., Ltd., the successor-in-interest to Grobest & I-Mei Industrial (Vietnam) Co., Ltd. (Grobest). For clarity, we will refer to both predecessor and successor companies as Grobest.

*Warmwater Shrimp From the Socialist Republic of Vietnam*, 79 Fed. Reg. 15,309 (Dep't of Commerce Mar. 19, 2014) (final re-conducted admin. review) (Final Results), JA3383-84, and the accompanying Issues & Decision Memorandum (I&D Memo), JA3374-82.  Grobest contends that the trial court erroneously sustained Commerce's assignment of a 25.76 percent total adverse facts available rate as Grobest's dumping margin in the final results of the re-conducted administrative review.  *Viet-I-Mei Frozen Foods Co. v. United States*, 83 F. Supp. 3d 1345 (Ct. Int'l Trade 2015) (*Grobest III*), JA5-23.

## STATEMENT OF THE FACTS

I.   The Original Administrative Proceeding

In February 2009, Grobest and the domestic industry each submitted separate requests for review of Grobest in the fourth administrative review of Commerce's antidumping duty order covering warmwater shrimp from Vietnam. JA34-50 (Letter from American Shrimp Processors Association and Louisiana Shrimp Association Requesting Administrative Review); JA51-59 (Letter from Grobest & I-Mei Requesting Administrative Review).  In March 2009, Commerce initiated the fourth review.  *Notice of Initiation of Administrative Reviews and Requests for Revocation in Part of the Antidumping Duty Orders on Certain Frozen Warmwater Shrimp From the Socialist Republic of Vietnam and the*

3

*People's Republic of China*, 74 Fed. Reg. 13,178 (Dep't of Commerce Mar. 26, 2009) (Initiation Notice), JA83-94.

At the time Commerce initiated the review, the review included 198 companies. *See Certain Frozen Warmwater Shrimp From the Socialist Republic of Vietnam*, 75 Fed. Reg. 12,206, 12,207 (Dep't of Commerce Mar. 15, 2010) (prelim. admin. review), JA2982-93. In June 2009, Commerce determined that, given the large number of companies involved in the review and its limited resources, it was impracticable to investigate all companies which had requested an individual review. JA95-102 (Respondent Selection Memo). Instead, pursuant to 19 U.S.C. § 1677f-1(c)(2)(B), Commerce selected for individual examination the two largest Vietnamese exporters/producers of subject merchandise by volume, the Minh Phu Group and Nha Trang Seaproduct Company. JA98-101.

Grobest then voluntarily submitted questionnaire responses and asked to be individually examined as a voluntary respondent. JA113-370 (Section A Questionnaire Response); JA1288-1384 (Section C Questionnaire Response); JA1709-1859 (Section D Questionnaire Response). Commerce, however, declined to examine Grobest individually. Accordingly, Grobest, like all non-selected separate rate companies, received a separate rate of 4.27 percent, which was the average of the mandatory respondents' antidumping rates. *Certain Frozen Warmwater Shrimp from the Socialist Republic of Vietnam*, 75 Fed. Reg. 47,771,

4

47,773-74 (Dep't of Commerce Aug. 9, 2010) (final admin. review), JA3203-09.

Commerce later issued amended final results which adjusted the separate rate

respondents' dumping rate to 3.92 percent after correcting ministerial errors.

JA3210-14 (Amended Final Results).

II.    Judicial Proceedings

    In the trial court, Grobest successfully challenged Commerce's decisions not

to examine it individually and to assign it the average rate of the two mandatory

respondents.    In July 2012, the trial court held that Commerce's decision not to

review Grobest individually was unlawful, remanded the case, and ordered

Commerce to "individually review Grobest as a voluntary respondent . . . ."

*Grobest & I-Mei Indus. (Vietnam) Co. v. United States*, 853 F. Supp. 2d 1352,

1365 (Ct. Int'l Trade 2012) (*Grobest II*), *appeal dismissed* (June 25, 2013).

    In September 2012, rather than individually examine Grobest in a court-

supervised remand proceeding, we requested—with Grobest's consent—that the

trial court enter final judgment.    The Government's request stated that "Commerce

will act in accordance with the Court's final decision and *will conduct an

individual examination of Grobest*."    JA3241-42 (Def. Mot. for Entry of Final

Judgment) (emphasis added).    The trial court then issued a final judgment stating

that Commerce "*shall* re-conduct its administrative review . . . of the anti-dumping

order . . . by individually examining Grobest as a voluntary respondent[.]"    JA3246

5

(Final Judgment Order) (emphasis added).[3]   The Government did not appeal the

final judgment and the judgment became final and conclusive.

III.    Administrative Proceeding Post-Final Judgment

On October 17, 2012, Commerce published a notice in which it stated that,

consistent with the final judgment and the Government's representations to the trial

court, it "will re-conduct the 2008/2009 administrative review of the antidumping

duty order on shrimp from Vietnam on Grobest." *Certain Frozen Warmwater*

*Shrimp From the Socialist Republic of Vietnam*, 77 Fed. Reg. 63,786 (Dep't of

Commerce Oct. 17, 2012) (notice of initiation of re-conducted admin. review) (Re-

Conducted Review Notice), JA3248-49.

Almost two months later, on December 12, 2012, in an abrupt reversal of its

earlier position that Commerce *must* examine it individually, Grobest submitted a

request to withdraw its participation from the individual examination.  JA3274-80

(Request to Withdraw for Voluntary Respondent Review and Revocation of

Antidumping Duty Order in Part).  In its request to withdraw, Grobest stated that it

had made the request "due to the significant management, personnel and

accounting changes that have occurred at Viet I-Mei since the period of review."

---

[3]  The trial court also ordered that Commerce "shall treat the review of
Grobest as being conducted pursuant to the deadlines listed in 19 U.S.C. §
1675(a)(3), calculating the deadlines beginning from the date that this final
judgment is entered."  JA3246 (Final Judgment Order).

JA3275.  Without any further explanation, Grobest stated that, "[i]n short, the administrative and legal costs of this examination are greater than the company wishes to incur at this time."  *Id.*  Grobest argued that by accepting Grobest's request to withdraw from individual examination, Commerce will maintain the "*status quo* . . . in which Grobest was granted separate rate status and given the average of the mandatory respondents' rates."  JA3276.

Commerce did not grant Grobest's withdrawal request.  Rather, in January 2013, Commerce issued supplemental section A, C, and D questionnaires to Grobest, directing the company to respond by January 29, 2013.  JA3257-62 (Supplemental A, C, and D Questionnaires).  Among other things, the supplemental questionnaires included inquiries regarding discrepancies in the quantity and value data that Grobest had reported, as well as questions about Grobest's affiliations.  JA3259, 3261-62.  Moreover, Commerce stated that if Grobest did not "cooperate . . . by not acting to the best of [Grobest's] ability to comply with a request for information, Commerce may use information that is adverse to [Grobest's] interest in conducting its analysis."  JA3258.

On January 29, 2013, instead of providing answers to the supplemental questionnaires or requesting an extension of time to do so, Grobest submitted a second request for withdrawal.  JA3289-93 (Second Request to Withdraw for Voluntary Respondent Review and Revocation of Antidumping Duty Order in

7

Part).  This request for withdrawal reiterated that Commerce "rescind its reexamination of Grobest's AR4 submissions for the reasons set forth" in its first request, namely, that it had become too burdensome for Grobest to participate in a voluntary review, and the company had changed its mind about wanting to be individually examined.  JA3290.

In February 2013, Commerce issued a second request to Grobest to respond to the supplemental questionnaires by February 13, 2013.  JA3263-68 (Second Set of Supplemental A, C, and D Questionnaires).  Once again, on the due date, Grobest refused to answer the supplemental questionnaires, and requested that Commerce discontinue its individual examination.  JA3295-3301 (Third Request to Withdraw for Voluntary Respondent Review and Revocation of Antidumping Duty Order in Part).  Grobest asserted that its two prior responses to Commerce "explained why Viet I-Mei now wishes to bring a halt to the Department's full examination of Grobest[,]" without offering any further explanations.  JA3297.

On February 20, 2013, after Grobest's repeated refusals to answer the supplemental questionnaires, the domestic producers submitted a letter to Commerce arguing that Commerce should apply adverse facts available to Grobest.  JA3272a (Domestic Producers' Request for Application of Adverse Facts Available).

8

In September 2013, Commerce preliminarily determined that Grobest had failed to cooperate to the best of its ability and assigned Grobest an adverse facts available rate of 25.76 percent, which was the previously-established Vietnam-wide antidumping rate. *Certain Frozen Warmwater Shrimp From the Socialist Republic of Vietnam,* 78 Fed. Reg. 57,352 (Dep't of Commerce Sept. 18, 2013) (prelim. admin. review), JA3302-06, and accompanying I&D Memo, JA3307-17. In March 2014, Commerce published the final results, in which it affirmed its decision to apply an adverse facts available dumping margin of 25.76 percent to Grobest.  JA3383-84 (Final Results), JA3374-82 (I&D Memo).

In the final results, among other things, Commerce explained that the trial court had "specifically ordered [it] to conduct an individual examination of Grobest, [and] rescission would be in conflict with the [Court's] order and judgment."  JA3376-78.  Further, Commerce found its regulations did not require it to rescind Grobest's review and explained that "both throughout the review and litigation, Grobest argued that it should be individually examined."  JA3378.

As to Grobest's argument that the adverse facts available dumping margin of 25.76 percent was punitive, Commerce explained that the rate was "appropriate to apply given Grobest's refusal to cooperate."  JA3379.  Commerce noted that Grobest failed to respond to the "supplemental questionnaire[s] [which] prevented [Commerce] from having complete and accurate information regarding affiliation

9

that is critical to the [Commerce]'s analysis." *Id.* Moreover, Grobest's adverse facts available rate was appropriate because it was the "rate also assigned as [adverse facts available] to the Vietnam-wide entity in the original investigation," was the "highest dumping margin on the record of any segment of this proceeding[,]" and had "been corroborated and continues to have probative value." JA3380.

IV.    Subsequent Judicial Proceedings

Grobest then challenged Commerce's decision to undertake the court-ordered individual examination of Grobest in the re-conducted administrative review. JA3388-97 (Complaint). Before the trial court, Grobest argued that, notwithstanding the trial court's final judgment, which expressly ordered Commerce to examine it individually, Commerce acted unlawfully by individually examining it in the re-conducted review. JA3419-27 (Grobest's Brief). Indeed, Grobest never filed a motion for relief from the judgment that would alter its mandatory nature. *See* USCIT R. 60(b)(6). Additionally, despite its repeated refusals to respond to the supplemental questionnaires, Grobest argued that the application of adverse facts available to it was unwarranted. JA3427-29. In other words, Grobest argued that Commerce should reassign it the same separate rate of 3.92 percent, which Commerce originally assigned, and which Grobest had persuaded the trial court to reject in the original litigation. JA3428.

V.    Trial Court's Holdings

The trial court held that "Commerce was not *required* by any statutory or regulatory authority to abort its court-ordered individual examination of Grobest simply because Grobest changed its mind regarding the benefit of such examination."  *Grobest III*, 83 F. Supp. 3d at 1361 (emphasis in original).  The Court further held that "Commerce's determination to continue its re-examination of Grobest notwithstanding Grobest's change of heart was reasonable on the record presented here, it is supported by substantial evidence, and is therefore affirmed." *Id.* at 1362.   This appeal followed.

## SUMMARY OF THE ARGUMENT

The trial court correctly held that Commerce was not required to terminate the court-ordered individual examination of Grobest and that Commerce's determination is supported by substantial evidence and otherwise in accordance with law.  Contrary to Grobest's contentions, Commerce's regulations provide that voluntary respondents, once accepted by Commerce, be treated like mandatory respondents and be subject to the same consequences should they fail to cooperate. *See* 19 C.F.R § 351.204(d)(2).

Moreover, the agency was required to comply with the trial court's final judgment, which (consistent with the Court's decision in *Grobest II*) expressly ordered Commerce to "re-conduct its administrative review . . . by individually

11

examining Grobest as a voluntary respondent[.]"  JA3246-47.  Grobest never filed

a motion for relief from this judgment that might have altered its mandatory nature.

Indeed, to the extent that Grobest argues that an ownership or management change

shifted its position regarding its request for individual examination, the change

occurred approximately two years before Grobest's request to rescind the re-

conducted review.

Next, once Commerce proceeded with Grobest's individual review, as the

trial court had ordered, the application of a 25.76 percent adverse facts available

rate, based on Grobest's repeated refusals to answer Commerce's supplemental

questionnaires, was supported by substantial evidence and otherwise in accordance

with law.  There is nothing punitive about assigning a company an adverse facts

available rate when, once accepted for individual examination, the company does

not cooperate to the best of its ability.   Indeed, the 25.76 percent adverse facts

available rate itself was not punitive because it was determined in accordance with

the statutory requirements and properly corroborated, which Grobest does not

dispute.

Finally, by failing to argue before the trial court that the adverse facts

available rate of 25.76 percent did not reflect "commercial reality" or any

deterrence factor warranted by the facts of this case, Grobest has waived those

arguments.  Further, Grobest has failed to administratively exhaust its argument

12

that the agency's efforts "must have been minimal" in undertaking the re-conducted administrative review, because it failed to raise that argument in its case brief before the agency.

## ARGUMENT

### I.    Standard Of Review

Although this Court recognizes that the Court of International Trade has unique and specialized expertise in trade law, this Court nevertheless reviews the trial court's decision *de novo*.  *See Union Steel v. United States*, 713 F.3d 1101, 1106 (Fed. Cir. 2013).  Specifically, the Court applies anew "the same standard of review the Court of International Trade used in reviewing the Commerce administrative record[.]"  *Norsk Hydro Canada, Inc. v. United States*, 472 F.3d 1347, 1358 (Fed. Cir. 2006).  Thus, the Court will uphold Commerce's determination unless it is "'unsupported by substantial evidence on the record, or otherwise not in accordance with law.'"  *Union Steel*, 713 F.3d at 1106 (quoting 19 U.S.C. § 1516a(b)(1)(B)(i)).  "Commerce's special expertise in administering the anti-dumping law entitles its decisions to deference from the courts."  *Ta Chen Stainless Steel Pipe, Inc. v. United States*, 298 F.3d 1330, 1335 (Fed. Cir. 2002).

In determining whether to sustain Commerce's statutory interpretation, the Court determines, first, "'whether Congress has directly spoken to the precise question at issue,'" and if so, it "'must give effect to the unambiguously expressed

13

intent of Congress.'" *Union Steel*, 713 F.3d at 1106-07 (quoting *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984)).  However, "'if the statute is silent or ambiguous with respect to the specific issue,'" then the Court considers "'whether the agency's answer is based on a permissible construction of the statute.'"  *Id.* at 1107 (quoting *Chevron*, 467 U.S. at 843). "[T]he whole point of *Chevron* is to leave the discretion provided by the ambiguities of a statute with the implementing agency."  *United States v. Eurodif S.A.*, 555 U.S. 305, 316 (2007) (quoting *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 981 (2005)).

"The specific factual findings on which [Commerce] relies in applying its interpretation are conclusive unless unsupported by substantial evidence."  *Eurodif*, 555 U.S. at 316 n.6 (citing 5 U.S.C. § 706(2)(E)).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951). Substantial evidence is also "less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence."  *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966).

14

II.     Statutory And Regulatory Background

The antidumping law is a remedial statute that authorizes Commerce to impose duties on imported products that it determines are being, or are likely to be, "dumped" – that is, sold in the United States at less than fair value.  *See* 19 U.S.C. § 1673; *Thai Plastic Bags Indus. Co. v. United States*, 746 F.3d 1358, 1360 (Fed. Cir. 2014).  At the conclusion of an antidumping duty investigation, if Commerce and the International Trade Commission have issued affirmative determinations, "Commerce publishes an order that directs customs officers to assess duties on imports of goods covered by investigation." *Nan Ya Plastics Corp. v. United States*, 810 F.3d 1333, 1337 (Fed. Cir. 2016) (mandate pending); *see also* 19 U.S.C. § 1673e(a).

Each year after the antidumping duty order is published, Commerce provides interested parties with an opportunity to request an administrative review of the order.   If Commerce receives a request for review, it conducts a review of the order.  19 U.S.C. § 1675(a)(1).  If there is no request for review, no administrative review is conducted.  In both investigations and administrative reviews, the antidumping duty statute requires Commerce to "determine the individual weighted average dumping margin for each known exporter and producer of the subject merchandise."  19 U.S.C. § 1677f-1(c)(1).  A dumping margin is the amount by which "'normal value' (the price a producer charges in its home

15

market) exceeds the 'export price' (the price of the product in the United States) or 'constructed export price.'" *United States Steel Corp. v. United States*, 621 F.3d 1351, 1353 (Fed. Cir. 2010) (citing 19 U.S.C. § 1677(35)(A)) (internal footnotes omitted).

In cases when a large number of respondents is involved in a proceeding, the antidumping duty statute allows Commerce to limit individual examination of respondents pursuant to 19 U.S.C. § 1677f-1.  In such cases, Commerce will determine a dumping margin for each respondent selected for individual examination based on its own data, or, if the respondent fails to cooperate to the best of its ability, based on adverse facts available.   A respondent not selected for individual examination will generally receive a rate based on the average of dumping margins calculated for individually examined respondents.

A respondent not selected for individual examination may voluntarily submit a questionnaire response containing information requested from exporters and producers selected for individual examination and request individual examination under 19 U.S.C. § 1677(m).  Section 1677(m) requires Commerce to consider whether individually examining any additional company would cause an "undue burden" or inhibit the timely completion of the review.  *Id.*  As the Statement of Administrative Action provides, in cases "where the number of exporters or producers is particularly high, Commerce may decline to analyze voluntary

16

responses because it would be unduly burdensome and would preclude the

completion of timely investigations or reviews." Uruguay Round Agreements Act,

Statement of Administrative Action, H.R. Rep. No. 103-316, vol. 1, at 873 (1994),

*as reprinted in* 1994 U.S.C.C.A.N. 4040, 4201 (SAA).

A voluntary respondent, if accepted for individual examination, must

cooperate with Commerce's requests for information and Commerce may use

adverse facts available if the respondent fails to cooperate to the best of its ability.

*See* 19 C.F.R § 351.204(d)(2) (noting that once accepted for individual

examination, voluntary respondents are subject to the same requirements as

mandatory respondents).  By statute, when a respondent either: (1) withholds

information that Commerce has requested; (2) fails to provide such information by

Commerce's deadlines for submission of the information or in the form and

manner requested; (3) significantly impedes an antidumping proceeding; or

(4) provides information that cannot be verified pursuant to 19 U.S.C. § 1677m(i),

then Commerce may "use the facts otherwise available in reaching the applicable

determination[.]"  19 U.S.C. § 1677e(a)(2).  Using "facts otherwise available" fills

the gap in the record caused by the respondent's failure to provide information

about its own business.  *Id.*

Further, if the respondent's failure to cooperate by not acting "to the best of

its ability" in complying with a request for information causes a record deficiency,

17

Commerce is authorized by statute to apply an adverse inference.  19 U.S.C.

§ 1677e(b).  A respondent's failure to cooperate to "the best of its ability" is

"determined by assessing whether [it] has put forth its maximum effort to provide

Commerce with full and complete answers to all inquiries . . . ."  *Nippon Steel*

*Corp. v. United States*, 337 F.3d 1373, 1382 (Fed. Cir. 2003), *accord Mukand, Ltd.*

*v. United States*, 767 F.3d 1300, 1304 (Fed. Cir. 2014).  The statute does not have

an intent element and "recognizes that mistakes sometimes occur," but it "does not

condone inattentiveness, carelessness, or inadequate record keeping."  *Nippon*

*Steel*, 337 F.3d at 1382.  Commerce's application of adverse inferences is meant

"to ensure that the party does not obtain a more favorable result by failing to

cooperate than if it had cooperated fully."  SAA at 870.  Because Commerce does

not have subpoena power, the use of adverse facts available is the only mechanism

available to Commerce to induce compliance with its requests for information.

*Nan Ya Plastics Corp.*, 810 F.3d at 1338.

III.    Commerce's Decision To Continue The Court-Ordered Review Of Grobest
        Is Supported By Substantial Evidence And In Accordance With Law

        Commerce was not required to rescind the court-ordered individual review

of Grobest.  First, Grobest has not established that any statute or regulation

required Commerce to terminate individual examination of a voluntary respondent

after it was accepted for examination, if the respondent has changed its mind.

18

Second, the trial court had expressly ordered Commerce to re-conduct the review of Grobest and to examine the company individually.  Third, Commerce's decision to apply adverse facts available to Grobest's dumping margin was supported by substantial evidence because Grobest had refused to cooperate or respond to Commerce's supplemental questionnaires.

### A.    Commerce Was Not Required To Terminate The Court-Ordered Individual Examination of Grobest

Contrary to Grobest's contentions, Commerce's regulations do not require Commerce to terminate individual examination of a voluntary respondent it has accepted for individual examination.   Grobest contends that while voluntary respondents have the right to an individual examination, they thereafter have no obligation to cooperate with Commerce should they change their mind.  *See e.g.*, Appellant Br. 23 ("Voluntary respondent status thus is a right sought by respondents, not an obligation.").  Grobest further contends that because it attempted to withdraw its request for voluntary respondent treatment within 90 days of the initiation of the re-conducted review, Commerce's regulation, 19 C.F.R § 351.213(d)(1), required the agency to discontinue Grobest's individual examination.  *Id.* at 23-25.  As the trial court correctly held below, these arguments lack merit.

19

First, Grobest's argument that voluntary respondents can terminate their individual examinations if they change their mind is contrary to Commerce's regulations.  A voluntary respondent, if accepted for individual examination (as Grobest was here by court order), must cooperate with the agency, and the agency may use adverse facts available if the respondent fails to cooperate.  *See* 19 C.F.R § 351.204(d)(2) (explaining that once accepted for individual examination, voluntary respondents are subject to the same requirements as mandatory respondents).  The regulation provides that once Commerce selects a voluntary respondent for individual examination, it "will be subject to the *same requirements* as an exporter or producer" selected as mandatory respondents.  *Id.* (emphasis added).  This includes a requirement that Commerce may apply adverse facts available should the voluntary respondent fail to cooperate.  *Id.* (citing 19 C.F.R. § 308) ("If the Secretary finds that an interested party 'has failed to cooperate by not acting to the best of its ability to comply with a request for information,' the Secretary may use an inference that is adverse to the interests of that party in selecting from among the facts otherwise available.").

Granted, as Grobest contends, the statute does not require parties whom Commerce did not select for individual examination to request individual examination.   Appellant Br. 22 (citing 19 U.S.C. § 1677m(a)). Still, the regulation makes clear that, once a voluntary respondent has made a request and has been

20

accepted for individual examination (as was the case here by the trial court's order and final judgment), the respondent is subject to the *same* requirements as mandatory respondents.[4]  *See* 19 C.F.R § 351.204(d)(2).  Grobest entirely fails to address, much less overcome, this governing regulation.  *See* Appellant Br. 15-16.

Rather, Grobest incorrectly argues that the requirement for requesting an individual examination includes a right to rescind the review even after a company has been accepted for individual examination.  *See* Appellant Br. 23.  To the contrary, if a respondent is accepted for individual examination, but refuses to provide answers to the agency's questionnaires or supplemental questionnaires (as was the case with Grobest here), the agency may apply facts available with an adverse inference.  *See* 19 C.F.R § 351.204(d)(2).  Grobest does not establish that this regulation does not apply here, and nor can it.

In interpreting 19 C.F.R § 351.204(d)(2), the trial court correctly held that "voluntary respondents are not entitled to unilaterally dictate their level of participation once accepted for individual examination."  *Grobest III*, 83 F. Supp. 3d at 1358.  Indeed, when a mandatory respondent informs Commerce that, instead of responding to its questionnaires, the company decides to withdraw from the

---

[4]  The issue of whether a voluntary respondent may withdraw its request before it has been accepted for individual examination is not presented here.  *See* 19 C.F.R. § 351.213(d)(1) (allowing parties to withdraw requests for review within ninety days of publication of the initiation notice).

individual examination and requests a separate rate based on other companies' data (as Grobest did here), Commerce has found lack of cooperation and applied adverse facts available.  *See, e.g.*, *Wooden Bedroom Furniture From the People's Republic of China*, 79 Fed. Reg. 51,954 (Dept. of Commerce Sept. 2, 2014) (final admin. review), and accompanying I&D Memo cmts. 2 & 4 (determining that respondent's withdrawal from participation in individual examination, failed to cooperate to the best of its ability and was not entitled to a separate rate based on information of other companies).

For example, in *Wooden Bedroom Furniture*, Commerce stated that it was not acceptable for mandatory respondents to "dictate their level of participation for the purposes of determining a more favorable separate rate based on another party's data." *Wooden Bedroom Furniture*, 79 Fed. Reg. 51,954, at I&D Memo cmt. 2 (citations omitted).  Commerce explained that after a mandatory respondent provides a separate rate, it could "cease participating in a proceeding by not responding to section C or D of the antidumping questionnaire, believing that its own data may result in a higher antidumping duty margin than if it simply participated as a separate-rate respondent." *Id.*  Thus, to prevent such manipulations, Commerce "instituted a practice that a respondent must provide all information that has been requested by [Commerce] and not selectively choose which requests to respond to and which information to submit." *Id.*

22

Pursuant to 19 C.F.R § 351.204(d)(2), voluntary respondents accepted for individual examination (as Grobest was here) are subject to the same requirements as mandatory respondents. *See Certain Cold-Rolled Carbon Steel Flat Products From Sweden*, 67 Fed. Reg. 31,251, 31,253 (Dep't of Commerce May 9, 2002) (prelim. determ.) (determining that voluntary respondent which "withdrew its participation . . . subsequent to being accepted as a voluntary respondent and its proprietary information [was thus] taken off the official record of the proceedings[,]" therefore "failed to provide any of the necessary information required by the Department" and it was appropriate to apply adverse facts available to calculate the dumping margin). If it were otherwise, the voluntary respondent process would be subject to potential manipulation by companies seeking individual review and then declining to proceed if the review started to look unfavorable. *Grobest III*, 83 F. Supp. 3d at 1358.

Second, Grobest concedes, as it must, that "[t]he U.S. antidumping statutory and regulatory framework does not expressly contemplate a voluntary respondent's rescission of a request for individual review." Appellant Br. 17. And yet Grobest contends that 19 C.F.R. § 351.213(d)(1), which does not apply here, nonetheless required Commerce to terminate the individual examination of Grobest, because Grobest had requested withdrawal of its request for voluntary respondent treatment within 90 days of publication of the notice of re-conduct of the fourth review.

23

Appellant Br. 23-25. Grobest argues that Commerce must "recognize that a party has an interest in forgoing the review and in maintaining the status quo," while "balanc[ing] this interest against Commerce's need to avoid procedural abuses and wasting resources." *Id.* at 18.

The trial court correctly rejected Grobest's argument, explaining that 19 C.F.R. § 351.213(d)(1) "is addressed to the rescission of reviews and is therefore not *directly* applicable." *Grobest III*, 83 F. Supp. 3d at 1358 (emphasis in original). This regulation, which Grobest attempts to shoehorn into the present situation, does not fit.

Here, as it did before the trial court, Grobest fails to consider that "this regulatory provision concerns the complete rescission of an administrative review with respect to a particular respondent (where all parties who have requested the review withdraw those requests), rather than the cessation of individual examination for a respondent who prefers the all-others rate." *Grobest III*, 83 F. Supp. 3d at 1358. Commerce has a well-established, court-approved policy of not rescinding reviews under 19 C.F.R § 351.213(d)(1), if another party expressed and maintains an interest in the review of the party seeking withdrawal. *See, e.g.*, *Ferro Union, Inc. v. United States*, 44 F. Supp. 2d 1310, 1314-17 (Ct. Int'l Trade 1999) (sustaining Commerce's decision not to rescind review of respondent that withdrew its request within 90 days, in situation where petitioners did not

24

withdraw their request for review).  Further, "the legislative history of 19 U.S.C. §

1675(a) indicates that Congress intended to limit reviews in which no one had an

interest, and *Commerce could rightfully continue a review in which there is an*

*expressed interest.*"  *Id.* at 1315 (emphasis added).

Here, the petitioners had requested review of Grobest under 19 U.S.C.

§ 1675(a) and 19 C.F.R. § 351.213(b), and never withdrew their request pursuant

to 19 C.F.R § 351.213(d)(1).  Thus, the regulation Grobest attempts to cast as

analogous has no application here.

Moreover, the trial court properly rejected Grobest's arguments as

"unpersuasive" and found that Grobest's analogy is "strained at best."  *Grobest III*,

83 F. Supp. 3d at 1359.  As the trial court explained, Grobest sought to transpose

the rescission regulation where it does not seek all-out rescission of its review, "but

rather would prefer the all-others rate over an individualized rate – an option that is

clearly unavailable to the mandatory respondents upon whom the voluntary

respondents' treatment is required to be modeled."  *Id.* at 1358 & n.73 (quoting 19

C.F.R § 351.204(d)(2)).  Furthermore, the trial court correctly noted that

Commerce's practice does not set out a mandatory balancing test, as Grobest seeks

to portray it, but rather Commerce considers various factors as "part of [the]

explanation for rejecting proposals to require the agency to rescind under certain

conditions."  *Id.* at 1359 (alteration added and emphasis in original).

25

Grobest has not identified any legal authority that requires Commerce to apply this balancing test, when a respondent who had been accepted for individual examination subsequently changes its mind and refuses to answer Commerce's supplemental questionnaires. *Id.* at 1361 ("Commerce was not *required* by any statutory or regulatory authority to abort its court-ordered individual re-examination of Grobest simply because Grobest changed its mind regarding the benefit of such examination.") (emphasis in original). Furthermore, even assuming that application of the test were required, the trial court still correctly concluded that "the weight of the evidence here supports the reasonableness of Commerce's decision." *Id.* at 1360.

As the trial court explained, the agency prepared and published the initiation notice, promptly examined Grobest's submissions, found numerous material discrepancies in Grobest's representations regarding the company's affiliations, the quantity and value of its sales, and factors of production. *Id.* ("[T]his is precisely the situation contemplated by the example that Commerce provided [in the Preamble to its regulations] . . . where 'a party request[ed] a review, [Commerce] devote[d] considerable time and resources to the review, and then the party withdr[ew] its request once it ascertain[ed] that the results of the review [were] not likely to be in its favor.'"). Moreover, in addition to resources Commerce spent following the trial court's final judgment, Commerce (not to mention the court and

26

other parties) expended resources over approximately two years litigating issues

surrounding Grobest's demand for individual examination prior to Grobest's

abrupt reversal of position.

Moreover, Grobest did not argue that the agency's efforts "must have been

minimal" before the agency and, thus, Grobest failed to exhaust its administrative

remedies. *Compare* Appellant Br. 34, *with* JA3399-3430 (Grobest case brief); 28

U.S.C. § 2637(d) (noting that Commerce "shall, where appropriate, require the

exhaustion of administrative remedies"); 19 C.F.R. § 351.309(c)(2) ("The case

brief must present all arguments that continue in the submitter's view to be

relevant to [Commerce's] final determination[.]"); *JBF RAK LLC v. United States*,

790 F.3d 1358, 1366 (Fed. Cir. 2015) (finding that the Court of International Trade

"takes a strict view of the requirement that parties exhaust their administrative

remedies before [Commerce] in trade cases.") (quotation omitted); *Mittal Steel*

*Point Lisas Ltd. v. United States*, 548 F.3d 1375, 1384 (Fed. Cir. 2008) (holding

that a party "failed to raise the issue at the appropriate time on remand and thus

abandoned its argument by failing to exhaust its administrative remedies before

Commerce.") (citation omitted).

Ironically, Grobest faults Commerce for making the finding that it expended

considerable time and resources in its preliminary decision memorandum, but not

expressly repeating this finding in the final I&D Memo. Appellant Br. 34 (arguing

that the reasoning did not make into the final decision).  Nothing in the final

determination states that Commerce disavowed its earlier finding.  *See* JA3313

(Preliminary I&D Memo) ("Moreover, [Commerce] has spent significant resources

as a result of Grobest's challenge to [Commerce's] original decision not to review

Grobest individually.  Now, after [Commerce] devoted its resources to individually

examine Grobest, Grobest inexplicably asks [Commerce] to return it to a prior

status, which the Court overturned at Grobest's request in the litigation that

Grobest initiated and pursued to its conclusion.").  Consequently, Grobest cannot

now argue that Commerce's efforts were "minimal," because it never raised this

argument in its case brief to Commerce, nor offered any record evidence in support

of this argument before the trial court.  *See* Appellant Br. 34.

　　　In any event, without citing any record evidence in support, Grobest

speculates that the resources the agency expended "must have been minimal."

Appellant Br. 34.  At the same time, Grobest contends that the trial court failed to

cite any record evidence to support its conclusion that Commerce had promptly

examined Grobest's initial questionnaire. *Id.* at 35.  Unlike Grobest, however, the

trial court did reference record evidence of Commerce's use of resources, as it

noted that Commerce had sent the supplemental questionnaire "shortly after the

latter's withdrawal request (keeping the holiday break in mind)," thus indicating

that "upon initiating this proceeding Commerce promptly examined Grobest's

28

questionnaires." *Grobest III*, 83 F. Supp. 3d at 1360 & n.76 (citing various documents). The exact timing of Commerce's supplemental questionnaires is irrelevant as the trial court noted that record evidence supported that Commerce did, in fact, expend such resources. *See id.*

The trial court's conclusion that Commerce promptly reviewed Grobest's initial questionnaire response is a reasonable and logical inference. *Grobest III*, 83 F. Supp. 3d at 1360 & n.76. For example, the trial court noted that "Commerce promptly examined Grobest's questionnaires" after issuing "a notice of initiation for the court-ordered reconducted review," and Commerce's timing of the supplemental questionnaires was likely due to the "holiday break." *Id.* at 1360. The supplemental questionnaires (which Commerce issued shortly after Grobest's last-minute attempt to avoid individual examination) identified numerous discrepancies and inaccuracies in Grobest's initial questionnaire response. JA3257-62 (Supplemental A, C, and D Questionnaires). Commerce could not have identified these deficiencies in Grobest's initial questionnaire response without first reviewing and analyzing Grobest's initial questionnaire response, which was over 2,000 pages long. *See* JA113-370 (Section A Questionnaire Response); JA1288-1384 (Section C Questionnaire Response); JA1709-1859 (Section D Questionnaire Response).

Grobest further argues that because Commerce did not apply the balancing test it contends was required by an inapplicable regulation, the trial court could not consider evidence that the agency devoted considerable resources to individually examine Grobest, but could only sustain Commerce's determination on the grounds the agency articulated.  Appellant Br. 29-30.  This is incorrect.  The trial court *did* sustain on the grounds the agency articulated, but nonetheless found Grobest's argument that Commerce should have applied the balancing test to be "unpersuasive" and "strained at best."  *Grobest III*, 83 F. Supp. 3d at 1359.

While the trial court stated that "*even if* Grobest was correct that Commerce should have applied a mandatory balancing test [that weighed the request against the resources expended and desire to discourage procedural abuses], the weight of the evidence here supports the reasonableness of Commerce's decision." *Id* (emphasis added).   This additional "even if" observation demonstrates that Commerce could not have terminated Grobest's individual examination even under the inapplicable test that Grobest unsuccessfully sought to impose on the agency. It in no way detracts from the trial court's holding that no balancing test was required for the agency to continue the court-ordered individual examination of Grobest.  *Id.*

Finally, to the extent that Grobest argues that the trial court ordered Commerce to calculate deadlines beginning from the date that this final judgment

entered, Appellant Br. 18-19, this argument is misplaced.  The trial court correctly ruled that 19 C.F.R. § 351.213(d)(1) is inapplicable; thus, Grobest's argument concerning the 90-day deadline under that regulation is futile.  *Grobest III*, 83 F. Supp. 3d at 1359 & n.73.  That regulation addresses requests to withdraw from the review; it does *not* govern whether a company should be individually examined or receive the average of the rates of respondents, which were individually examined. *See* 19 C.F.R. § 351.213(d)(1).

Here, Commerce acted consistently with 19 C.F.R § 351.204(d)(2), the regulation that governs review of voluntary respondents, which Grobest has failed to discuss in its brief.  Moreover, as we demonstrate below, the trial court had expressly ordered Commerce to individually examine Grobest.

B.    The Trial Court's Final Judgment Required Commerce To Examine Grobest Individually

Alternatively, Commerce was required to comply with the trial court's final judgment, which expressly ordered the agency to examine Grobest individually. *See* JA3246 ("[T]he Department of Commerce *shall* . . . re-conduct its administrative review of . . . the anti-dumping duty order . . . by individually examining Grobest as a voluntary respondent[.]") (emphasis added). Notwithstanding the final judgment's mandatory nature, Grobest contends that

Commerce "abused its discretion" by not terminating the individual examination. Appellant Br. 19. Grobest's arguments in support of its contention lack merit.

First, Grobest argues that the final judgment did not constrain Commerce because the re-conducted review proceeded under Commerce's administrative authority and not under the authority of the Court. *See* Appellant Br. 21. Grobest's argument that the final judgment "did not change the fundamental concept that voluntary review is *voluntary*," *id.* at 23 (emphasis in original), entirely misses the point that compliance with final judgments, such as the judgment here *ordering* Commerce to individually examine Grobest, are not voluntary. *Gordon v. United States*, 117 U.S. 697, 702 (1864) (noting that rules of finality, for judgments of Article III courts, are "final and conclusive upon the rights of the parties").

Although the trial court permitted Commerce to conduct the administrative proceeding under its administrative authority without judicial oversight, the trial court's final judgment (consistent with *Grobest II*) expressly required that Commerce "shall" individually examine Grobest. JA3246; *see also Grobest II*, 853 F. Supp. 2d at 1365 ("Commerce's rejection of Grobest's request for voluntary respondent status is remanded to Commerce *to conduct an individual review of Grobest as a voluntary respondent . . . .*") (emphasis added). Similarly, in requesting entry of judgment, we represented to the trial court that "Commerce will

32

act in accordance with the Court's final decision and *will conduct an individual examination of Grobest*." JA3241-42 (emphasis added). Commerce thus had no choice *but* to continue the individual examination of Grobest because it was under court order to do so. *See id.*; *Gordon*, 117 U.S. at 702.

Second, given the mandatory language of the final judgment itself, Grobest contends that the parties could have sought relief from the judgment, implicitly acknowledging that Commerce had no discretion to violate the final judgment. Appellant Br. 20-21. However, Grobest, whose continued pursuit of individual examination led to the entry of judgment, never sought to modify or otherwise obtain relief from the judgment. *See id.* (citing *Grobest III*, 83 F. Supp. 3d at 1361 n.83); USCIT R. 60(b) (authorizing parties to seek relief from Court judgment). Indeed, USCIT R. 60(b) serves as a mechanism for parties to move to modify final judgments, which otherwise have the force and effect of law. *See Gordon*, 117 U.S. at 702; *D & M Watch Corp. v. United States*, 795 F. Supp. 1160, 1168 (Ct. Int'l Trade 1992) (citation omitted) ("There can be no doubt but that when a judgment contains an ambiguity there is only one place where the judgment may be construed, or its provisions, directions, and orders interpreted, or the ambiguity eliminated—to wit, in the courts."). Hence, Grobest does not, nor *cannot*, identify a valid basis for Commerce to have ignored the trial court's order to examine Grobest individually.

33

Moreover, Commerce had no obligation or need to petition for relief, particularly when Grobest made no effort itself to petition the court that had issued the final judgment. When the trial court ordered Commerce to individually examine Grobest, the Government did not appeal, and the agency commenced its individual examination of Grobest: precisely what the trial court ordered it to do. JA3248-49 (Re-Conducted Review Notice). As the trial court correctly noted, we were not required to seek relief in the trial court at the whim of Grobest. *Grobest III*, 83 F. Supp. 3d at 1361 ("Commerce was not required by any statutory or regulatory authority to abort its court-ordered individual re-examination of Grobest simply because Grobest changed its mind regarding the benefit of such examination.").

Third, Grobest argues that Commerce did not have to comply with the final judgment and had the discretion to allow Grobest's withdrawal from voluntary examination because Grobest went through ownership and management changes and no longer desired to be examined individually. *See* Appellant Br. 28-30. As a justification, Grobest repeatedly asserted that "the administrative and legal costs of this examination are greater than the company wishes to incur at this time." JA3275. However, the asserted December 2010 change in Grobest's ownership and management occurred approximately two years before Grobest made its request to rescind the review for those very reasons. *See* JA3424.

34

For almost two years, Grobest pressed forward with litigation to compel
Commerce to examine it individually, instead of seeking voluntary dismissal.
Grobest was content to require the trial court, Commerce, and the other parties to
expend significant resources on the litigation, when a voluntary dismissal would
have ended the litigation and given Grobest the same rate that it now belatedly
seeks.[5]  As a result, the case culminated in a favorable final judgment to Grobest
that compelled Commerce to examine Grobest individually.  *See Grobest II*, 853 F.
Supp. 2d at 1365.  The trial court's judgment does not contain a "change of heart"
exception to that express requirement.  JA3246-47.  Nor did Grobest seek any
modification to the judgment, pursuant to USCIT R. 60(b), consistent with its
reversal of position.

Grobest asserts that the official change in ownership on December 31, 2010,
did not render participation of Grobest in examination infeasible "overnight" and
that the new management needed time to realize that it no longer desired individual
examination.  Appellant Br. 16 n.4.  We do not suggest that we have insight into

---

[5] *See*, *e.g.*, *Hubscher Ribbon Corp., Ltd. v. United States*, 979 F. Supp. 2d
1360, 1363 (Ct. Int'l Trade 2014) (summarizing the *Yangzhou Bestpak Gifts &
Crafts Co. v. United States*, 783 F. Supp. 2d 1343 (Ct. Int'l Trade 2011), litigation,
in which a separate rate respondent successfully challenged a separate rate of
123.83 percent before the Court, while contending that it should receive a zero
percent rate, but when Commerce then decided to examine it individually,
voluntarily dismissed the case and conceded that all its entries would be covered
by the original 123.83 percent separate rate as a result of the voluntary dismissal).

Grobest's management's decision-making process, nor do we suggest that its new owners should have dismissed the lawsuit that demanded individual examination the day they acquired the company.   However, the new owners and managers had *almost two years* of contested litigation before they requested Commerce to rescind the individual examination and instead receive the rate that Commerce originally assigned (the same rate which Grobest wants now).  Appellant Br. 41 (requesting a remand to allow Commerce to assign "the 3.92 percent separate rate that Commerce assigned in its Amended Final Results").  Presumably, the new ownership and management were kept informed by their counsel and approved numerous court submissions that sought individual examination of Grobest over the course of the lengthy and contested litigation.

Finally, Grobest argues that on December 12, 2012, it submitted a request to withdraw its July 9, 2009 request for voluntary respondent treatment, and Commerce should have honored this request.  *See* Grobest Br. 15-17.  Grobest argues that Commerce's regulations regarding rescinding an overall request for an administrative review required the agency to rescind its individual examination of Grobest.  *See id.*  As we demonstrated above, however, Commerce's regulations do not require termination of the individual examination of Grobest.  Moreover, an administrative regulation cannot void the trial court's final judgment, from which Grobest sought no relief, which was not overturned on appeal, and expressly

36

required Commerce to examine Grobest individually.  *See Gordon*, 117 U.S. at

702; *D & M Watch Corp.*, 795 F. Supp. at 1168.

     C.    Grobest's Actions Satisfied The Statutory Criteria For Applying Facts
           Available With An Adverse Inference

     The record of this review shows that Commerce was justified in applying

adverse facts available, when Grobest refused to respond to Commerce's

supplemental questionnaire.

     Before the trial court, Grobest argued that *both* the individual examination of

Grobest and the resulting rate were punitive.  JA3427 (arguing that the review

"resulted in an impermissibly punitive total [adverse facts available] rate of 25.76

percent"), JA3428 ("Commerce has impermissibly sought to exacerbate the waste

of such resources through actions that can only be characterized as punitive").

Grobest now contends only that the 25.76 percent adverse facts available *rate* is

punitive.  Appellant Br. 41 ("Commerce's application of total [adverse facts

available] at a rate of 25.76 percent was impermissibly punitive in this case.").  It

has thus abandoned any argument that its individual examination is punitive.  *See*

*also United States v. Great Am. Ins. Co. of N.Y.*, 783 F.3d 1320, 1328 (Fed. Cir.

2013) ("It is well established that arguments that are not appropriately developed

in a party's briefing may be deemed waived.") (citations omitted).

In any event, contrary to Grobest's contentions, Commerce's decision not to terminate individual examination of Grobest with a resulting adverse facts available rate is not "impermissibly punitive."  Grobest Br. 41; JA3427-29 (Grobest trial court brief).  Commerce is statutorily authorized to individually examine an exporter or producer of the subject merchandise.  *See* 19 U.S.C. §§ 1675 (a)(1), (2)(A) (authorizing Commerce to determine individual dumping margins in administrative reviews based on comparison of normal value and export price (or constructed export price) for entries of the subject merchandise).  And, as we explained above, in this case, Commerce complied with the final judgment from *Grobest II* by doing what the trial court ordered it to do.  *See* JA3246 ("[T]he Department of Commerce *shall* . . . re-conduct its administrative review of the anti-dumping order . . . by individually examining Grobest as a voluntary respondent[.]") (emphasis added).

Grobest further argues, incorrectly, that the total adverse facts available rate of 25.76 percent assigned to it is "impermissibly punitive."  Appellant Br. 41.  This Court has held that "an [adverse facts available] dumping margin determined in accordance with the statutory requirements is not a punitive measure. . . ."  *KYD, Inc. v. United States*, 607 F.3d 760, 768 (Fed. Cir. 2010) (alteration added).  Here, Commerce explained that it selected the adverse facts available rate of 25.76 percent, which was the "rate also assigned as [adverse facts available] to the

Vietnam-wide entity in the original investigation," only *after* Grobest failed to cooperate. JA3380 (I&D Memo).

Grobest does not deny that it refused to answer Commerce's supplemental questionnaires, and it has not identified—let alone discussed—any statutory provision that prohibits Commerce from resorting to adverse facts available under these circumstances. *See PAM S.p.A. v. United States*, 582 F.3d 1336, 1340 (Fed. Cir. 2009) ("Commerce's discretion in applying an [adverse facts available] margin is particularly great when a respondent is uncooperative by failing to provide or withholding information."). Nor has Grobest challenged the corroboration of the 25.76 percent rate. Appellant Br. 46 (conceding that "Viet I-Mei did not specifically address the underlying data used to corroborate the margin"), *id.* at 47 ("regardless of the specifics of Commerce's corroboration analysis"); *see PAM S.p.A.*, 582 F.3d at 1340 (stating that Congress tempered deterrent value of adverse facts available rates with corroboration requirement). "Given these uncontested findings," the trial court correctly held that "Commerce properly resorted to 'the facts otherwise available'" and "use[d] an inference that is adverse to the interests of [Grobest] in selecting from among the facts otherwise available." *Grobest III*, 83 F. Supp. 3d at 1363.

On appeal, however, Grobest makes several new arguments concerning the 25.76 percent rate and its corroboration (*e.g.*, whether the rate reflected

"commercial reality and any deterrence factor warranted by the facts of this case"),

which it did not raise in its briefs before the agency and the trial court.  Appellant

Br. 44.  Again, by failing to make these arguments in their case brief to Commerce

and before the trial court, Grobest may not now raise them on appeal.  *Sage Prods.*

*Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1426 (Fed. Cir. 1997) (an argument is

waived if not raised before the trial court); *Frank v. Dep't of Transp., FAA*, 35 F.3d

1554, 1559 (Fed. Cir. 1994) (same).  Such arguments are both waived and

precluded by failure to exhaust administrative remedies.  *Quingdao Sea Line*

*Trading Co. v. United States*, 766 F.3d 1378, 1388 (Fed. Cir. 2014) (holding that

this Court would not review arguments not raised before Commerce); *Essar Steel*

*Ltd. v. United States*, 678 F.3d 1268, 1274 (Fed. Cir. 2012) (same).

Moreover, Grobest improperly conflates two separate determinations:

Commerce's decision to continue with the company's individual examination and

the application of adverse facts available after Grobest refused to cooperate.   The

former does not automatically lead to the latter.  After the trial court entered the

final judgment, Commerce reopened the proceedings and sought information that

would potentially remedy discrepancies and inaccuracies in Grobest's original

questionnaire response.  *See* JA3250-56, 3263-68.  The agency issued a

supplemental questionnaire repeatedly seeking information that would potentially

permit it to remedy the deficiencies in Grobest's original response and to calculate

Grobest's margin based on Grobest's own data. *See id.* Unfortunately, Grobest

repeatedly refused to provide such information as well as information regarding

Grobest's affiliations. JA3273-80, 3288-3301. Grobest's failure to respond to

Commerce's requests is why Commerce assigned Grobest an adverse facts

available rate. JA3379-80 (I&D Memo) ("Grobest's refusal to provide information

constitutes circumstances under which the Department can conclude that Grobest

has not cooperated to the best of its ability.").

As the trial court correctly held, "the statute provides a procedure for

companies experiencing difficulties with responding to Commerce's inquiries,

which Grobest neglected to follow." *Grobest III*, 83 F. Supp. 3d at 1361. In this

case, Grobest did not follow this statutory procedure and the trial court found

Grobest's justification for stonewalling the agency's requests for information

inadequate. *Id.*

Specifically, the trial court noted that if an interested party cannot fulfill a

request from Commerce, it may notify Commerce of its difficulties, "*together with

a full explanation and suggested alternative forms in which such party is able to

submit the information*[.]" *Id.* (emphasis in original). Then, Commerce shall

"consider the ability of the interested party to submit the information in the

requested form and manner and may modify such requirements to the extent

necessary to avoid imposing an unreasonable burden on the party." *Id.* But here,

41

rather than "provid[e] a full explanation and suggested alternatives," Grobest responded in rote fashion that the administrative costs were too great for the company to comply with Commerce's request.  *Id.*  The trial court correctly held that Grobest's response lacked any "explanation of any difficulties that Grobest may have had with submitting the information requested, but rather is a conscious decision not to incur the costs of cooperating with Commerce's examination."  *Id.*

Grobest does not dispute that it refused repeatedly to respond to Commerce's supplemental questionnaire, but claims that the change in ownership and management prevented it from cooperating.  Appellant Br. 9-10.  Whatever Grobest might claim now regarding its new ownership and management, despite more than two years elapsing as the litigation unfolded, it gave Commerce no reason to expect that it would not provide basic information to straightforward supplemental questions regarding the company's affiliations, among other things. *See* JA3250-56, 3263-68.  Likewise, Grobest could be reasonably expected to reconcile discrepancies in the information that it provided to Commerce in its original questionnaire response.  *Id.*

As this Court has consistently held, "each interested party that appears before Commerce must cooperate 'to the best of its ability' with Commerce's requests for information, 19 U.S.C. § 1677e (b), which means that each party must 'do the maximum it is able to do[.]'" *Nan Ya Plastics Corp.*, 810 F.3d at 1338

42

(quoting *Nippon Steel*, 337 F.3d. at 1382).  It is well settled that reliance on

inattentiveness of owners and managers, or inadequate record-keeping, like

Grobest asserts, is not a sufficient justification for Grobest's refusal to respond to

Commerce.  *Nippon Steel*, 337 F.3d at 1382.

Grobest acknowledges that the ownership and management change occurred

on December 31, 2010—approximately two years before Grobest requested that

the agency rescind its individual review.  Appellant Br. 16 n.4.  During this entire

period of time, Grobest aggressively pursued individual examination in litigation.

Eventually, Grobest succeeded and the trial court entered the final judgment

ordering Commerce to examine the company individually: the very same

examination from which Grobest now seeks relief and claims is "impermissibly

punitive."  Appellant Br. 41.

Apparently realizing that both the law and facts support Commerce's

determinations, Grobest laments its "unfortunate position," and resorts to blaming

its misfortunes on Commerce's original determination.  *Id.* at 43.  According to

Grobest, its misfortunes have happened "due to unlawful actions of Commerce

itself." *Id.*   But, as demonstrated above, Commerce lawfully conducted the

individual examination of Grobest, and it was Grobest's own failure to cooperate

with requests from Commerce that has placed it in its current predicament.

Notably, however, Grobest seeks to return to the same rate that Commerce assigned it in the original fourth review (which Grobest successfully challenged), and now faults Commerce for determining a new rate by individually examining Grobest. *Id.* It defies logic and common sense that Grobest describes the same action—namely, the individual examination of Grobest (which Grobest first demanded, but now opposes)—as both punitive and lawful in the same paragraph of its brief. *See id.* Under these circumstances, Grobest's appeal fails.

## CONCLUSION

For these reasons, the United States respectfully requests that the Court affirm the trial court's judgment.

<div style="margin-left: 45%;">

Respectfully submitted,

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney
General

JEANNE E. DAVIDSON
Director

</div>

OF COUNSEL:

<div style="display: flex;">

<div>

MYKHAYLO GRYZLOV
Senior Attorney
Office of the Chief Counsel for Trade
   Enforcement and Compliance
U.S. Department of Commerce
Washington, DC 20230

</div>

<div>

s/ Patricia M. McCarthy
PATRICIA M. MCCARTHY
Assistant Director

s/ Kara M. Westercamp
KARA MARIE WESTERCAMP
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice

</div>

</div>

44

P.O. Box 480, Ben Franklin Station
Washington, D.C. 20044
Tele:  (202) 305-7571
Fax:  (202) 514-8624

March 10, 2016                                    Attorneys for Defendant-Appellee

## <u>CERTIFICATE OF COMPLIANCE</u>

1.      This brief complies with the type-volume limitation of Federal Rule of

Appellate Procedure 32(a)(7)(B).  The brief contains 9,419 words, excluding the

parts of the brief exempted by Federal Rule of Appellate Procedure

32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Federal Rule of

Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of

Appellate Procedure 32(a)(6). The brief has been prepared in a proportionally

spaced typeface using Microsoft Word in Times New Roman 14.


<u>s/Kara M. Westercamp</u>
Kara M. Westercamp
March 10, 2016

46

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this _10th_ day of

_____March_____, __2016__, a copy of the foregoing

_____Brief of Defendant-Appellee The United States_____

was filed electronically.

[✓] This filing was served electronically to all parties by operation of the Court's

electronic filing system.

_____/s/ Kara M. Westercamp_____

[ ] A copy of this filing was served via:

[ ] hand delivery

[ ] mail

[ ] third-party commercial carrier for delivery within 3 days

[ ] electronic means, with the written consent of the party being served

To the following address:

_____